## ÆTNA LIFE INS. CO. OF HARTFORD, CONN., v. DUNKEN. (No. 6492.)*

(Court of Civil Appeals of Texas. Austin. Nov. 15, 1922. Rehearing Denied Jan. 17, 1923.)

1. **Principal and agent ⬪175(3)—Ratification relates back to time of agent's act.**

The ratification by a principal of the unauthorized act of an agent makes the same the act of the principal, and relates back to the time when the same was done.

2. **Principal and agent ⬪170(3)—Principal, not wishing to ratify, on receiving notice of unauthorized act of agent must notify other party of repudiation.**

If the principal does not intend to ratify the unauthorized act of one assuming to act as his agent, it is incumbent upon him, on receiving notice of such transaction, to promptly give notice of the want of such authority and of his repudiation of such transaction.

3. **Insurance ⬪95—Insurer held chargeable with knowledge of agent delivering policy without collection of premium.**

Where the state agent of an insurance company without authority delivered a converted policy to insured, without collecting the premium therefor, the knowledge of the agent as to the fact of delivery was the knowledge of the company; the agent being the agent of the company for the purpose of making such delivery.

4. **Insurance ⬪665(3)—Finding that insurer's officers acquiesced in delivery of policy without collection of premium sustained.**

In an action on a converted insurance policy, delivered to insured by the state agent without collecting the premium therefor, as was his duty, evidence *held* to sustain a finding that the officers of the insurer acquiesced in the delivery of the policy as a completed contract, authorizing a recovery where insured died without paying premium.

5. **Insurance ⬪125(4)—Policy, through non-resident agent of nonresident insurance company, held Texas contract.**

Where a citizen of Texas took out a converted insurance policy from an insurance company located in Connecticut, the application for the policy being made through an agent residing in Tennessee, but the claim being payable in Texas, the policy was a Texas contract.

6. **Insurance ⬪17, 602—Foreign insurance company, obtaining permit to do business in state, is subject to laws thereof.**

Where a foreign insurance company obtains a permit to do business in this state, it thereby subjects itself to the laws of this state, in view of Rev. St. art. 4746; and, in an action on a life policy, the inclusion in the judgment of attorney fees and penalty under the Texas law was proper against a Connecticut company, whose Tennessee agent wrote the policy on the life of a resident of Texas, payable in the latter state.

Appeal from District Court, McLennan County; Prentice Oltorf, Judge.

Action by Mrs. Pearl Stone Dunken, administratrix, against the Ætna Life Insurance Company of Hartford, Conn. Judgment for plaintiff, and defendant appeals. Affirmed.

Wm. J. Moroney, of Dallas, for appellant. W. E. Spell and Stanford & Stanford, all of Waco, for appellee.

Findings of Fact.

JENKINS, J. The appellant is a life insurance company; its home office is at Hartford, Conn. Its vice president, J. L. English, and its assistant secretary, W. H. Newell, during the times herein mentioned, were two of its executive officers. H. B. Alexander was its manager for the state of Tennessee. On December 17, 1910, Alexander took the application of W. J. Dunken for a seven-year term policy, convertible, at the option of the insured, into a 20-pay commercial policy. Appellant issued this policy, No. 98322, January 28, 1911. Thirty days' grace was allowed for the payment of premium. In January, 1916, Dunken decided to exercise his option to convert this policy into a 20-pay commercial policy, and so informed Mr. Alexander. For the purpose of keeping the term policy alive until the conversion could be effected, Dunken executed a note, payable March 29, 1916, to the company, for

the amount of the annual premium. The first policy, together with the extention note, was sent by Alexander, together with the application for conversion, to the home office. The annual premium on the first policy was $105.40; on the second policy, which will hereinafter be referred to as the new policy, the premium was $277.70. Dunken desired the new policy to be dated back to the date of the first policy, which was done. Under this arrangement, the amount due by Dunken on the new policy was $277.70, the annual premium, plus the difference between $105.40 for five years with interest thereon, amounting, in the aggregate, to $1,299.97. The new policy had a loan value of $987. This left a balance due on the first payment of $312.97.

On February 28, 1916, appellant issued the new policy, No. 152775, and sent same to Alexander, to be by him delivered to Dunken. Vice President English, in sending this policy to Mr. Alexander, wrote him as follows: "Inclosed find this policy, in exchange for 98322, surrendered." He also gave an itemized statement, showing that the cash due after deducting the loan value was $312.97. At the time of issuing the new policy, the appellant marked the first policy surrendered, so it and the note given for its extention were no longer of any force.

On March 4, 1916, Alexander mailed the new policy to Dunken, at Waco, Tex., where Dunken then lived. It was received by Dunken on March 6th, and was retained by him to the time of his death, about June 1, 1916. Accompanying this policy was a letter from Alexander as follows:

"Nashville, Tenn., March 4, 1916.

"Mr. W. J. Dunken, 115 S. 5th Street, Waco, Texas—Dear Mr. Dunken: I take pleasure in handing you herewith your $10,000.00 commercial 20-pay policy converted from seven-year term.

"I also inclose a loan note which must be signed by you, with two witnesses to your signature, whose addresses should be given. Also please sign the form 378, which authorizes the company to deduct the 1916 premium from the proceeds of the loan.

"The amount due now to complete the transaction is $312.97, which is determined as follows:

| | |
|---|---|
| Conversion cost | $1,020 88 |
| 1916 premium and interest | 279 09 |
| | $1,299 97 |
| Deduct net loan | 987 00 |
| | $ 312 97 |

"Please do not fail to send me your policy when returning the above.

"Thanking you, I remain,

"Sincerely yours, H. B. Alexander, Manager."

Dunken never remitted the $312.97, nor signed the loan form. There was no further correspondence between Dunken and Alexander, nor between Dunken and appellant. The case was tried by a jury, to whom was submitted, among others, the following special issues:

"Special issue No. 1: Did the agent of the defendant insurance company deliver the new policy, No. 152775, as a completed contract, with the intention that the same should become an effective and binding obligation from the time of receipt of same by the assured, W. J. Dunken? Answer Yes or No. Answer: Yes.

"Special issue No. 2: If you have answered No to the first issue, you need not answer the second issue, but if you have answered Yes to the first issue, then answer this, the second issue: Was the delivery of said policy as a completed contract acquiesced in by any executive officer of the defendant company? Answer Yes or No. Answer: Yes."

The evidence was sufficient to sustain these findings. Reference to the evidence will be made in this opinion, wherein we state our reasons for sustaining the findings of the jury.

This is the third appeal. An examination of our opinions on the former appeals, 204 S. W. 241, and 221 S. W. 691, will aid in understanding this case.

## Opinion.

It is the contention of appellant that the policy herein sued on never became a contract for the reason that the first premium was never paid. The policy recites:

"This policy shall not take effect until the first premium herein shall have been actually paid during the good health of the insured, a receipt for which payment shall be the delivery of the policy."

The first premium was not paid. But the policy was delivered to the insured by Alexander, with the intention that it should become a completed contract. The evidence as to this not only sustains the finding of the jury as to issue No. 1, but is so complete that we do not deem it necessary to quote from the same.

Having found that the verdict of the jury in answer to special issue No. 1 is supported by the evidence, it becomes our duty to affirm the judgment herein, unless we should set aside the finding of the jury on the second special issue.

The evidence on the trial from which this appeal is taken is practically the same as that on the first and second trials hereof, with the addition of the evidence excluded on the first trial. In our opinion on the first appeal, Chief Justice Key, speaking for the court, said:

"We cannot say that there was no testimony * * * to show either of the waivers referred to. * * * On the contrary, we hold that

the case should go back for another trial, at which, after admitting the excluded testimony heretofore referred to, as well as all other admissible evidence, the issues of waiver should be clearly submitted to the jury, and judgment should be based upon the jury's findings upon those issues." 204 S. W. 243.

Upon the second appeal, Mr. Justice Brady, speaking for the court, said:

"The question of waiver [was] a proper one for the determination of the jury." 221 S. W. 693.

[1] A careful examination of the record herein, in connection with the brief and oral argument of the able counsel for appellant, has afforded us no grounds for changing our opinion on this issue. If the company, knowing that the policy had been delivered without the payment of the premium, acquiesced in such delivery, it thereby ratified the same. The ratification by a principal of the unauthorized act of an agent makes the same the act of the principal, and relates back to the time when the same was done. Evans v. McKay (Tex. Civ. App.) 212 S. W. 688; Brazoria County v. Padgitt (Tex. Civ. App.) 160 S. W. 1173; Brazoria County v. Rothe (Tex. Civ. App.) 168 S. W. 73–74.

[2] If the principal does not intend to ratify the unauthorized act of one assuming to act as his agent, it is incumbent upon him, on receiving notice of such transaction, to promptly notify the other party thereto of the want of such authority, and his repudiation of such transaction. Ins. Co. v. Griffin, 59 Tex. 513; Morrison v. Ins. Co., 69 Tex. 353, 363, 364, 6 S. W. 607, 5 Am. St. Rep. 66; Assurance Soc. v. Cole, 13 Tex. Civ. App. 486, 35 S. W. 720.

[3, 4] The policy was delivered to Dunken on March 6, 1916, as a completed contract. He retained possession of it to the time of his death, June 1, 1916. Neither Alexander nor the company ever notified him that Alexander had no authority to make such delivery. No demand was made of him to return the policy, nor was he asked to pay the balance of the premium. If the appellant did not intend to ratify such delivery, it was its duty, upon receiving information of such delivery, to promptly notify Dunken of that fact, so that he might protect himself by paying the balance of the premium, if the appellant was willing to receive the same, and, if not, to give him the opportunity to procure other insurance. When did the appellant learn of such delivery? Alexander was selected by appellant to make such delivery. He knew that he mailed the policy to Dunken on March 4, 1916, and that it would probably reach him, as it did, within two days thereafter. Though Alexander may have had no authority to deliver the policy without collecting the premium, he knew that he had done so. Alexander being the agent of the appellant the purpose of making such delivery, we think that his knowledge as to this transaction was the knowledge of the company.

But aside from this Alexander was instructed by the vice president of the company, in his letter of February 28th, to report on the new policy not later than March 31st. Also he was required by the rules of the company to make semimonthly reports on policies issued through his office. He said that he made such reports as to the policy in question, but he evaded answering as to what such reports showed. The appellant offered no evidence as to these reports. In the absence of evidence to the contrary, it must be presumed that he made truthful reports. If so, the appellant knew a few days after March 31st that the policy had been delivered, and that the premium had not been paid; and it received like information about the middle and about the last of April, 1916. Howard E. Wright, assistant auditor of the company, was at Nashville the latter part of April and the early part of May, auditing Alexander's books. On May 1st, W. H. Newell, an executive officer of the company, wrote Mr. Wright as follows:

"Referring to Vice President English's letter of February 28th, in which Mr. Alexander was instructed to report the increase premium under No. 152775—Dunken—in his 31st March report, if he has been unable to make collection, this policy with renewal receipts should be returned."

To this letter Wright replied on May 5, 1916, as follows:

"Referring to your letter of May 1st, addressed to the writer concerning No. 152775—Dunken—I have taken this matter up personally with Mr. Alexander. * * * The policy together with the loan papers were sent to Mr. Dunken at Waco, Texas, by Mr. Alexander, and the matter is now in correspondence. * * * It may be that I will go to Waco within the next ten days, and have agreed with Mr. Alexander to complete the necessary."

If the policy had never been delivered by authority of appellant, and it had not ratified the unauthorized delivery, there was nothing to "complete." It is evident that some word was omitted by the stenographer. "Settlement" would be an appropriate word. If that was not the word intended, such fact could have been shown by Mr. Wright. In reply, Mr. Newell wrote Mr. Wright, under date of May 11th:

"The insurance has lapsed and before anything can be done it will be necessary for Mr. Dunken to submit an application for revival."

The policy could not have "lapsed" if it was never in force, and was not a subject for "revival" if it never had life. Mr. Newell, as an executive of a great life insurance corporation, is presumed to understand the meaning of those words, and to have used them advisedly. We think this evidence is sufficient to sustain the verdict of the jury on the second issue.

It may be that the following facts influenced the appellant not to repudiate the delivery of the policy by Alexander without collecting the premium: Alexander was not merely an agent of the company to solicit insurance. He was a state agent, and as such the company doubtless had confidence in his business ability. He had represented the company for five years in its dealings with Dunken, in reference to the two $10,000 policies theretofore held by him. Dunken had on several occasions failed to pay his premiums when due, for which he had given extension notes, all of which had been paid. Dunken, though hard up for cash, appears to have been solvent. The first premium on this policy differed from ordinary first premiums in this—it was $1,299.97, made up of the regular annual premium of $279.09 and the cost of converting the term policy into this policy, $1,020.88. Of this first premium, the premiums paid by Dunken for five years on the convertible policy, and the loan value of the new policy paid $987, leaving a balance due of $312.97. Alexander was entitled to a part of this as his commission. It is evident that Alexander thought Dunken would pay this balance in a short time. The company seems to have taken this view of the matter, perhaps deeming it to its advantage to do so.

This opinion is based upon the assumption that Alexander had no authority to deliver the policy without collecting the premium, but we do not wish to be understood as so holding. The view that we take of this case renders it unnecessary for us to decide that point.

[5, 6] Appellant submits the proposition that the court erred in rendering judgment for attorney's fees and damages, for the reason that the policy is either a Connecticut contract or a Tennessee contract, and that appellee would not, under the facts of this case, be entitled to recover attorney's fees or a penalty under the law of either of those states. This contention as to the law of these states seems to be correct, but we hold that the policy herein is a Texas contract. Dunken was a citizen of Texas, the claim was payable in this state, and we think it immaterial that the appellant was in Connecticut, or that the application for the policy was made through an agent who resided in Tennessee. Besides this, it was admitted that appellant had a permit to do business in Texas, and was transacting business in this state. By obtaining such permit, appellant subjected itself to the laws of this state. R. S. art. 4746; Cravens v. Ins. Co., 148 Mo. 583, 50 S. W. 519, 53 L. R. A. 305, 71 Am. St. Rep. 628; Ins. Co. v. Villenueve, 25 Tex. Civ. App. 356, 60 S. W. 1014–1017.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.