AETNA LIFE INSURANCE COMPANY ET AL. *v.* DUNKEN, ADMINISTRATRIX OF DUNKEN.

ERROR TO THE COURT OF CIVIL APPEALS OF THE THIRD SUPREME JUDICIAL DISTRICT OF THE STATE OF TEXAS.

No. 62. Argued October 14, 1924.—Decided December 15, 1924.

1. A finding of a state court that a contract was completed,—a pure question of fact,—*held* not reviewable by this Court where the federal right involved depended on the legal question whether, the contract being completed, rights and obligations under it were governed by a local statute or the laws of another State. P. 393.
2. A seven-year term policy, issued by a life insurance company in Connecticut and delivered to the insured in Tennessee where he resided, provided that, at the sole option of the insured, upon any anniversary of its date, without medical reëxamination, it was convertible into a twenty payment life commercial policy, bearing the same date and issued at the same age, on payment of the

difference between the premiums then already paid and those required under the converted policy. The insured in due form exercised the option after he had become a citizen and inhabitant of Texas, and the converted policy was sent to him there. *Held:*

(*a*) That the second policy was in effect but a continuation of the first and, like it, was controlled by the laws of Tennessee. P. 395.

(*b*) That, in an action upon the second policy in Texas, where the insurance company was doing business when it issued, a Texas statute (Art. 4746, Rev. Civ. Stats. 1911,) imposing a penalty and allowing attorney's fees could not constitutionally be applied against the company, since a State cannot regulate business outside of her limits and control contracts made by citizens of other States, in disregard of their laws. P. 399.

248 S. W. 165, reversed.

ERROR to a judgment of the Court of Civil Appeals of Texas which affirmed a judgment for the amount of a life insurance policy, less certain offsets, together with a statutory penalty and attorney's fee. The Supreme Court of the State dismissed an application for a writ of error for want of jurisdiction.

*Mr. W. J. Moroney,* with whom *Mr. John R. Moroney* was on the brief, for plaintiffs in error.

*Mr. C. A. Boynton, Mr. W. E. Spell* and *Mr. J. A. Stanford,* for defendant in error, submitted.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is an action brought by the defendant in error upon a policy of insurance issued by the insurance company on the life of W. J. Dunken. The insurance company is a Connecticut corporation. When it issued the policy it was doing business in Texas under the laws of that State, of which Dunken then was a citizen and inhabitant.

The Texas statute provides:

" Any contract of insurance payable to any citizen or inhabitant of this state by an insurance company or cor-

poration doing business within this state shall be held to be a contract made and entered into under and by virtue of the laws of this state relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed, and the premiums and policy (in case it becomes a demand) should be payable without this state, or at the home office of the company or corporation issuing the same." Art. 4950, Rev. Civ. Stats., 1911.

The statute further provides that where loss occurs failure to make payment within thirty days after demand shall render the company liable to pay the holder of the policy in addition to the amount of loss twelve per cent. damages on the amount of such loss, together with reasonable attorney fees for the prosecution and collection thereof. Art. 4746.

These provisions, together with others, are declared to be conditions upon which foreign insurance companies shall be permitted to do business within the State and any such corporation engaged in issuing insurance policies within the State is deemed to have assented thereto as a condition precedent to the right to engage in such business. Art. 4972.

The policy in question was issued under the following circumstances: On December 17, 1910, H. B. Alexander, manager for the insurance company in the State of Tennessee, took the application of Dunken, then a resident of Tennessee, for a seven-year term policy. The policy was duly issued in Connecticut and delivered in Tennessee to Dunken. By its terms, at the sole option of the insured, upon any anniversary of its date, without medical reëxamination, it was convertible, among other forms of insurance, into a twenty payment life commercial policy, bearing the same date and issued at the same age, on payment of the difference between the premiums already paid and those required under the converted policy. On February

19, 1916, the seven-year policy still being in force, Dunken, in the meantime having moved to Texas, exercised his option and applied to the company· for a conversion " in accordance with the conditions " of that policy just stated. His application stipulated that the statements and answers in the original application for the seven-year term policy should be the basis of the new policy and form a part of the same. The application was mailed to the Tennessee manager and by him forwarded to the home office of the company in Connecticut. There the old policy was cancelled, stamped " Surrendered; new number, 152,775; $10,000 ", and a twenty payment life commercial policy, bearing the new number and conforming to the express terms of the agreement in the original policy, was issued and forwarded to Alexander in Tennessee for delivery. Alexander sent the policy by mail to Dunken at Waco, Texas, together with a loan note and a form authorizing the company to deduct the 1916 premium from the proceeds of the loan to be signed by him and returned. Dunken received these documents in due course of mail and retained the policy, but did not answer Alexander's letter, pay the ·premiums or execute the loan papers. Three months later he died. In the letter transmitting the policy Alexander fixed no time for the execution and return of the loan note and authority to deduct the 1916 premium; nor did he suggest that the delivery of the policy was in any way qualified. There was no further correspondence or notice of any kind from the company. It was agreed that the demand required by Article 4746 of the Texas statute, heretofore cited, was made by defendant in error. Judgment was rendered against the company for the amount of the policy less certain offsets, together with the statutory penalty of twelve per cent. and an attorney's fee of $3,000, which judgment was duly affirmed by the Court of Civil Appeals. 248 S. W. 165. The Supreme Court of the State having dismissed an ap-

plication for a writ of error for want of jurisdiction, the writ of error here was issued to the intermediate court. *Randall* v. *Commissioners,* 261 U. S. 252.

The judgment below is challenged upon these grounds: (1) The policy as shown by the undisputed evidence never became a completed or binding contract; (2) it was a Tennessee or Connecticut contract and, since under the laws of those States no penalty or attorney's fee was recoverable, the Texas statute as construed and applied, violates the contract impairment clause, the full faith and credit clause, and the several clauses of § 1 of the Fourteenth Amendment of the Federal Constitution; and (3) assuming it to be a Texas contract, plaintiff having demanded and sued for substantially more than she recovered, the suit was rightfully defended and the statute as construed and applied to that situation violates the same provisions of the Federal Constitution.

Defendant in error moves to dismiss the writ of error or affirm the judgment of the state court upon the ground that the asserted federal questions are so lacking in substance as to be frivolous. This motion must be denied. Other matters aside, the contention that the contract is controlled by the law of Tennessee or Connecticut—in which event the Texas statute in respect of penalty and attorney's fee as construed and applied, is unconstitutional—clearly presents a substantial question under the full faith and credit clause of the Constitution. *Royal Arcanum* v. *Green,* 237 U. S. 531, 540, 541. See also, *New York Life Ins. Co.* v. *Head,* 234 U. S. 149, 159–160. And the cause is properly here on writ of error, under § 237 of the Judicial Code as amended September 6, 1916, c. 448, 39 Stat. 726. *Kansas City So. Ry. Co.* v. *Road Imp. Dist. No. 6,* 256 U. S. 658.

*First.* Coming then to the merits, the first contention to be considered presents a pure question of fact, which

19458°—25——29

was decided against plaintiffs in error by the jury in re-
sponse to specially submitted issues.  Upon these issues
the jury found that the new policy was delivered by an
agent of the insurance company as a completed contract
with the intention that it should become effective and
binding from the time of its receipt by Dunken; and that
such delivery as a completed contract was acquiesced in
by an executive officer of the company.  This verdict met
with the concurrence of the trial court and, after a full
review of the evidence, of the appellate court.  The rule
is settled that the decision of a state court upon a ques-
tion of fact ordinarily cannot be made the subject of in-
quiry here.  See for example, *Missouri, K. & T. Ry. Co.*
v. *Haber,* 169 U. S. 613, 639; *Smiley* v. *Kansas,* 196 U. S.
447, 453–454.  To this general rule there are two equally
well settled exceptions: " (1) Where a Federal right has
been denied as the result of a finding shown by the record
to be without evidence to support it, and (2) where a
conclusion of law as to a Federal right and findings of
fact are so intermingled as to make it necessary, in order
to pass upon the Federal question, to analyze the facts."
*Northern Pacific Ry. Co.* v. *North Dakota,* 236 U. S. 585,
593, and cases cited.  See also *Truax* v. *Corrigan,* 257 U.
S. 312, 324–325.  This case comes within the general rule
and not within either of the exceptions.  The fact decided
is that the policy sued upon was delivered as a completed
and binding contract.  The federal question presented
arises from the ruling of the court that the Texas and not
the Tennessee statute controls this contract.  The as-
serted federal right was not denied as a result of the find-
ing of fact; nor are the conclusion in respect of the federal
right and the finding interdependent or so intermingled as
to cause it to be necessary to consider the latter in order
to pass upon the former.  That the contract was effective
is a fact equally consistent with the determination of the
federal question either way.

*Second.* The argument that the policy was not a Texas contract proceeds upon two grounds: (a) that the converted policy became effective, if it ever did, when it was mailed by the company's agent in Tennessee; (b) that the original policy was clearly a Tennessee or Connecticut contract, and the converted policy, being executed under the optional privilege granted by the original contract and in exact compliance with its terms, is a subsidiary and not an independent agreement, and the rights and obligations of the parties are controlled by the law of the original contract.

We proceed at once to the consideration of the second ground, since if that is well founded it will be unnecessary to consider the first. Whether a subsequent contract made in pursuance of the provisions of an earlier one is to be regarded as separate, detached and independent, or as a continuation and in effect the same, is a matter not always free from difficulty. The question as applied to substituted policies of insurance has not heretofore arisen in this Court and apparently has seldom arisen in the state courts. In *Dannhauser* v. *Wallenstein,* 169 N. Y. 199, 208, where a ten payment life policy provided that after the payment of two or more equal premiums, notwithstanding default in payment of subsequent premiums, the company would grant a paid-up policy for a proportionate part of the original amount of the policy, it was held that such paid-up policy when issued was not an independent contract. The court said:

" It was simply a continuation of the original contract under the option which gave the holder thereof the right, after two or more annual premiums had been paid, to cease paying the annual premiums and take a paid-up policy in exchange for the first one. It was a change in the mere form of the contract expressly provided for by its own terms. It is true that the first policy, the original evidence of the contract between the insured and the com-

pany, was 'surrendered to the company and canceled' when the paid-up policy was issued, but this was simply a part of, and in compliance with, the terms of the original contract. The contract was continued as it provided that it might be, in the form of a paid-up policy, such as was accepted by the defendant. It was not a modification, but a fulfillment of the original contract."

The facts were held to justify an opposite conclusion in *Gans* v. *Aetna Life Ins. Co.*, 214 N. Y. 326. There the original policy contained a provision to the effect that if the insured should commit suicide within one year from the date thereof the policy should be void. It allowed, among other options, an exchange for another policy bearing the same date upon payment of a sum equal to the difference between the premiums actually paid and those which would have been earned by the substituted policy. The substituted policy, however, bore the date of its issue and by its terms the suicide provision ran for " one year from the date hereof." It was contended that, since the assured might have exercised his option so as to have made the date of the original policy the date of the substituted policy, the option actually exercised should be construed to that effect. But the court replied that, the parties having agreed that the date of the new policy should be that of its issue and so made it, and the premium payable being adapted to the kind of policy selected and to the then insuring age of the assured, it must be held to be an independent contract to be construed without reference to the options not exercised.

Under different circumstances the same question came before the Supreme Court of Tennessee, in *Silliman* v. *International Life Ins. Co.*, 131 Tenn. 303. There a five-year term policy provided that the insured might at any premium date exchange it for any form of policy then in use at the premium fixed by his age at the time of the exchange or at the age in the original policy by paying the

difference in premiums, etc.   The policy contained a provision to the effect that in case of suicide within one year from its date the company should be liable only for the amount of the premiums paid.   Four years later the insured demanded another form of policy and the exchange was made on the old application and medical examination, the terms of the second policy being in strict accord with the obligations of the first policy.   The new policy limited the right of recovery in case of suicide " within one year from the date on which this insurance begins."   Six months after the change of policies, insured committed suicide.   The Tennessee court held that the two policies were in effect one and the same contract, and that the insurance began within the meaning of the suicide clause in the second policy at the time the first policy was issued, since the dominant purpose of the parties was to carry out the provisions of the contract contained in that policy. That time having run before the exchange, the clause was rejected as surplusage.   The *Gans Case* was distinguished upon several grounds, and especially upon the ground that there was nothing to show that the second Tennessee policy was an independent, complete and isolated contract, unconnected with the first policy; but on the contrary that it was expressly shown that they were connected, " and that the second was issued because of and in compliance with the requirements of the first."   See also, *McDonnell* v. *Alabama Gold Life Ins. Co.*, 85 Ala. 401, 412–415; *People* v. *Globe Mutual Life Ins. Co.*, 15 Abbott's N. C. 75; *Barry* v. *Brune,* 71 N. Y. 261, 268.

While this Court has not passed upon the precise question here presented, it had before it an analogous question in *New York Life Ins. Co.* v. *Dodge,* 246 U. S. 357, and *Mutual Life Ins. Co.* v. *Liebing,* 259 U. S. 209.   The *Dodge Case* dealt with an insurance policy issued in Missouri to a resident and citizen of Missouri by a New York corporation with a Missouri license.   The policy provided

that " cash loans can be obtained by the insured on the sole security of this policy on demand at any time after this policy has been in force two full years," etc. It was provided that application for any loan should be in writing and that the loan would be subject to the terms of the company's loan agreement. Under this provision the insured procured a loan at the home office of the company in New York City, hypothecating the policy there as security. The loan agreement declared that it was made and to be performed in New York and under and pursuant to the laws of that State. Upon failure of the insured to pay a premium the entire reserve of the policy was applied to satisfy the loan and thereupon all obligation ceased under the provisions of New York law. The insured having died, suit was brought by the beneficiary upon the policy in reliance upon the Missouri nonforfeiture statute (Rev. Stats., 1899, § 7897), by the terms of which, unlike the New York statute, the insurance would have continued in force. This Court held that while the policy was clearly a Missouri contract the loan agreement was an independent contract made in New York and subject to New York law. In the course of the opinion it is said (p. 373):

" It should be noted that the clause in the policy providing ' cash loans can be obtained by the insured on the sole security of this policy on demand, etc.,' certainly imposed no obligation upon the company to make such a loan if the Missouri statute applied and inhibited valid hypothecation of the reserve as security therefor as defendant in error maintains. She cannot, therefore, claim anything upon the theory that the loan contract actually consummated was one which the company had legally obligated itself to make upon demand."

The decision proceeds upon the theory that the provision in respect of loans did not constitute an absolute promise to make a loan upon simple demand at all events;

and that the loan contract was an independent, subsequent agreement made in another State. In the *Liebing Case,* subsequently decided, the policy executed in Missouri provided that "the company will . . . loan amounts within the limits of the cash surrender value," etc., and this Court, pointing out that the language of the policy in the *Dodge Case* was "cash loans can be obtained," etc., said (pp. 213–214):

"The policy now sued upon contained a positive promise to make the loan if asked, whereas in the one last mentioned [the *Dodge Case*] it might be held that some discretion was reserved to the company."

In the light of these decisions, then, we inquire whether the second policy issued to Dunken is to be controlled by Tennessee or Texas law. The contract contained in the original policy was a Tennessee contract. The law of Tennessee entered into it and became a part of it. The Texas statute was incapable of being constitutionally applied to it since the effect of such application would be to regulate business outside the State of Texas and control contracts made by citizens of other States in disregard of their laws under which penalties and attorney's fees are not recoverable. *New York Life Ins. Co.* v. *Head,* 234 U. S. 149; *Overby* v. *Gordon,* 177 U. S. 214, 222. The second policy here was issued in pursuance of, and was dependent for its existence and its terms upon, the express provisions of the contract contained in the first one. By those provisions, upon the simple application of the insured, the new policy must issue. Nothing was left to future agreement. The terms of the new policy were fixed when the original policy was made. In effect, it is as though the first policy had provided that upon demand of the insured and payment of the stipulated increase in premiums that policy should, automatically, become a twenty payment life commercial policy. It was issued not as the result of any new negotiation or agreement but

in discharge of preëxisting obligations. It merely fulfilled promises then outstanding; and did not arise from new or additional promises. The result in legal contemplation was not a novation but the consummation of an alternative specifically accorded by, and enforceable in virtue of, the original contract. If the insurance company had refused to issue the second policy upon demand, the insured could have compelled it by a suit in equity for specific performance. See *Tayloe* v. *Merchants' Fire Ins. Co.*, 9 How. 390, 405.

From these premises it necessarily results that the second policy follows the status of the first for which it was exchanged, and is not subject to the Texas statute relating to penalties and attorney's fees but is controlled by Tennessee law. The judgment below, therefore, in so far as it gives effect to the Texas statute by imposing a penalty of twelve per cent. and allowing attorney's fees, is erroneous, in that the Texas statute cannot constitutionally be applied to a Tennessee contract.

*Third.* This conclusion renders it unnecessary to consider the third contention urged as ground for reversal.

The judgment below must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*