## INTERNATIONAL LIFE INS. CO. v. MOWBRAY et al.

Circuit Court of Appeals, Seventh Circuit.
December 7, 1927.

No. 3839.

1. **Insurance ⬤668(12)—Whether death of insured was accident or suicide held, under evidence, for jury.**

Evidence *held* to require submission to jury of issue whether death of insured was from accident or suicide.

2. **Insurance ⬤125(2)—Where reinstatement of lapsed life policy was discretionary with company, reinstated policy held new contract, governed by law of state where made.**

A life policy, issued in Iowa by an Iowa company, provided that it might be reinstated after lapse for default in payment of premiums, "upon evidence of health satisfactory to the company." The policy was taken over and assumed by an Illinois company, and after a default was reinstated on approval of the application by its medical director. *Held* that, the reinstatement being discretionary with the company, the reinstated policy was a new contract, governed by the law of Illinois, and a provision therein limiting the time for commencing suit, void under the statutes of that state, was ineffective.

3. **Question not decided.**

Whether the time within which action must be brought is governed by the law of the forum in all cases—not decided.

In Error to the District Court of the United States for the Western Division of the Northern District of Illinois.

Action at law by Myrl L. Mowbray and Leona Isabel Mowbray, minors, by the Rochelle Trust & Savings Bank, their guardian, against the International Life Insurance Company. Judgment for plaintiffs, and defendant brings error. Affirmed.

On June 21, 1917, the Standard Life Insurance Company, of Des Moines, Iowa, issued to David L. Mowbray a life insurance policy containing a double indemnity clause in case of death through accident. Assured died March 24, 1921, while the policy was in force. On August 1, 1920, the assured allowed the policy to lapse, but the Standard Life Insurance Company, of Decatur, Ill., a successor company, reinstated it. The firstnamed company sold its assets to the Protective League Life Insurance Company of Decatur, Ill., which company thereafter changed its name to the Standard Life Insurance Company, of Decatur, Ill. Plaintiff is a successor company. In acquiring the business and assets of its predecessor company, each purchaser reinsured all outstanding policies "in accordance with the terms of said policies as they are written."

The beneficiaries named in the policy were, and still are, minors. Shortly after the death of the assured, a guardian was appointed for them, who made proof of death and received certain installments due under the policy on the assumption of a maximum liability of $5,000. The parties apparently assumed that the assured committed suicide.

The present action was brought to recover the amount provided for under the double indemnity clause of the contract. The defendant interposed two defenses: First, the assured committed suicide, and therefore the double indemnity provision did not apply; second, plaintiffs' failure to bring this action within the one-year period fixed by the policy.

Upon the trial, the jury rendered a general verdict for plaintiffs, and judgment was thereupon entered for the full amount, less installments paid, plus interest. Defendant's assignments of error deal with the introduction of evidence, with the instructions to the jury, and with the ruling of the court on defendant's motion for a directed verdict.

A further statement of the essential facts will appear in the opinion.

John M. Atkinson, of St. Louis, Mo., for plaintiff in error.

Franklin J. Stransky, of Chicago, Ill., for defendants in error.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge (after stating the facts as above). Throughout this

opinion, parties will be described as in the District Court.

Defendant contends that the evidence conclusively shows that assured committed suicide. Its maximum liability was therefore limited to $5,000. It further contends that, if this issue was for the jury, the court erred both in the admission of evidence and in charging the jury.

[1] It is hardly necessary to set forth in detail all the evidence that bore upon this issue. The assured, who was 36 years old and in good health, was asphyxiated while on a short visit to Chicago. On the wall of the rooming house where he stopped, there was a combination gas and electric light fixture supplied with two buttons a few inches apart, one for turning on the gas and the other for the electric lights. Assured turned on the gas and the question was: Did he do it accidentally or intentionally?

It appeared that the assured was a dealer in farm land and had shipped live stock to Chicago. He moved from Iowa to Illinois in 1918. Shortly before his death, he lost some money on a real estate investment. His financial condition does not appear. His family consisted of a wife and two minor children. There was no evidence of unhappy or disturbed domestic relations. Upon his last trip to Chicago assured was accompanied by a friend, to whom he owed some $300. While in Chicago $200 of this indebtedness was paid. The two men remained in the city a couple of days. They attended a theater one evening. They remained in a rooming house two nights, the second night occupying different rooms. On the second day the two men drank considerable liquor. It was late when they retired, assured retaining an unfinished bottle of whisky. The room was locked and the window was shut. There was less whisky in the bottle in the morning than when the parties separated. In the morning, the landlady detected the odor of gas and traced it to the room. Upon entering the room, it was found that the gas jet was open and the assured was dead.

This, in brief, is the story. We agree with the District Judge that these facts presented a jury question on the issue of accidental death.

Upon the trial, the court received in evidence the coroner's verdict, which declared "the asphyxiation to be accidental." Error is assigned upon the reception of this evidence. Defendant refused to admit the reception of timely proof of death upon blanks by it furnished. It was therefore a part of plaintiffs' burden to show that such proof was seasonably furnished.

Moreover, the court charged the jury that such evidence had been stricken out, "and you therefore must not consider the same as evidence or attach any weight whatever to the same in determining any fact or facts in this case." This charge obviously cured any error, if error there was, in the reception of this evidence. Likewise we think defendant's failure to admit the timely service of proof of death made this evidence admissible.

The court charged the jury respecting the presumption of law against suicide as follows: "The court instructs the jury that to commit suicide is contrary to the general conduct of mankind, and shows moral turpitude in a sane person, and therefore the presumption of law is against the theory of suicide, and before the jury can find that said David L. Mowbray committed suicide there must be evidence introduced sufficiently strong to overcome such presumption and to convince the jury affirmatively that said David L. Mowbray committed suicide. While this presumption of law is disputable, and subject to be overcome by evidence which discloses that the deceased in fact committed suicide, it is nevertheless entitled to weight as affirmative evidence to support the theory of accidental death."

To this charge defendant excepted in the following language: "Defendant excepts to that part of the general charge of the court relative to the presumption against suicide as being erroneous and too broad." Before the charge was given, defendant requested certain instructions on suicide. It did not, however, except to the court's failure to give any of these instructions. The above exception, therefore, did not preserve any error based on the court's refusal to give proposed instructions. We have, however, read all the instructions bearing upon suicide, and find them to be eminently fair, comprehensive, and free from error.

[2] Defendant's chief reliance, however, is on its second defense. The clause depended upon reads: "No suit shall be brought or maintained to collect under this policy unless commenced within one year from the time of knowledge by the beneficiary of the death of the insured." The beneficiaries learned of the death of their father immediately after it occurred. More than four years elapsed between the date of the death of the assured and the date of commencement of this action.

Plaintiffs seek to avoid the effect of this provision and these facts by citing the Illinois statutes which read:

"No policy of life insurance shall be is-

sued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, if it contain any of the following provisions:

"1. A provision limiting the time within which any action at law or in equity may be commenced to less than three years after the cause of action shall accrue." Smith-Hurd's Illinois Revised Statutes 1925, p. 1515, c. 73, § 262.

"No life insurance company or association organized under the laws of this State, or doing business within the limits of the same, shall make or permit any distinction or discrimination between insurants of the same class and equal expectation of life, in its established rates; * * * nor in the terms and conditions of the contract between such company and the insurants."

Smith-Hurd's Illinois Revised Statutes 1925, p. 1511.

Defendant contends that the validity of an insurance contract is to be determined by the law of the state where it is made; that the original insurance contract in the instant case was an Iowa contract; that the transaction by which the defendant became liable on the policy did not constitute reinsurance, but was merely the transfer of the policy, and the assumption of the obligation created thereby in accordance with the terms of said policy was originally issued; that the reinstatement of the assured after the policy had been lapsed did not create a new contract of insurance, or affect the liability of the assured, and therefore the Illinois statute governing the time for bringing suit on insurance policies does not apply.

We accept defendant's contention that the original contract of insurance was an Iowa contract and its validity must be determined by the Iowa law. Moreover, it may, for the purpose of the present argument, be conceded that the assumption of the Iowa contract by the Illinois corporation did not modify or affect the validity of the Iowa contract. The narrow and precise question determinative of the present controversy turns upon the effect of the reinstatement of insurance by the Illinois company after the assured had lapsed the Iowa contract. And, as stated in Ætna Insurance Co. v. Dunken, 266 U. S. 389, 45 S. Ct. 129, 69 L. Ed. 342, the determination of whether the defendant's contract is to be regarded as a separate one or as a continuation of the old one "is a matter not always free from difficulty."

Whether the second contract was issued in pursuance of, and dependent for its existence upon, the express provision of the original contract, must be determined by an examination of the policy as well as the facts showing the circumstances under which the reinsurance occurred. In other words, did the assured have an unqualified right to be reinstated, or was such reinsurance or reinstatement the result of a new negotiation or agreement. The material provisions of the policy respecting lapses and reinsurement are herewith quoted:

"*Grace for Payment of Premium.*—A grace of one month will be allowed for the payment of any premium after the first, during which time the policy will remain in full force. After the first year the premiums hereon may, if desired, be paid in semi-annual or quarterly installments in advance in accordance with the rates endorsed hereon.

"*Restoration of Policy.*—In the event of default in payment of any premium this Policy may be reinstated at any time, if not previously surrendered, upon payment of any indebtedness against this Policy, and of all past due premiums with interest at five per cent. per annum, *and upon evidence of health satisfactory to the Company.*"

What are the facts? The policy called for the annual payment of $167 on the 21st day of June, the first payment being made in 1918. In 1921 the assured lapsed his policy by failing to pay his annual premium. He was, however, notified on August 28, 1921, that the "medical director of the company had approved his application for reinstatement" and he was thereupon reinstated.

The language *"upon evidence of health satisfactory to the Company,"* appearing in the reinstatement clause, determines the question adversely to defendant's contention that the Illinois statute does not apply; for, when assured lapsed his policy, the Iowa contract was at an end. True, the assured might apply for reinstatement at any time, but his *right* to reinstatement was dependent upon *defendant's satisfaction* with his health. Assured could not have brought suit in equity to compel the specific performance of his contract, if defendant in good faith denied his application for reinstatement. A new contract was possible only as the result of new negotiations, and depended for its consummation upon the satisfaction of defendant with the then state of assured's health.

While none of them are directly in point, a study of three decisions (New York Life Insurance Co. v. Dodge, 246 U. S. 357, 38 S. Ct. 337, 62 L. Ed. 772, Ann. Cas. 1918E, 593; Mutual Life Insurance Co. v. Liebing, 259 U. S. 209, 42 S. Ct. 467, 66 L. Ed. 900; Ætna Life Ins. Co. v. Dunken, 266 U. S.

389, 45 S. Ct. 129, 69 L. Ed. 342), leaves no room for doubt as to the proper tests to be applied where a court is called upon to determine the effect of such a reinstatement as is here under consideration.

In the Liebing Case, the so-called *new* contract was held to be a Missouri contract—the same as the original contract—because there was no "discretion" reserved to the company in the original contract as to whether it would make the "new" contract.

In the Dodge Case, the court, dealing with a new agreement affecting an insurance policy which was clearly a Missouri contract, called attention to the loan clause of the policy and declared they "certainly imposed no obligation upon the company to make such a loan, if the Missouri statute applied and inhibited valid hypothecation of the reserve as security therefor, as defendant in error maintains. She cannot, therefore, claim anything upon the theory that the loan contract actually consummated was one which the company had legally obligated itself to make upon demand." The so-called new agreement was therefore held to be a New York contract, and governed by the New York law.

In the Dunken Case, the court pointed to the distinguishing facts in the two last-cited cases and said: "The decision proceeds upon the theory that the provision in respect of loans did not constitute an absolute promise to make a loan upon simple demand at all events; and that the loan contract was an independent, subsequent agreement made in another State. In the Liebing Case, subsequently decided, the policy executed in Missouri provided that 'the company will * * * loan amounts within the limits of the cash surrender value,' etc., and this Court, pointing out that the language of the policy in the Dodge Case was 'cash loans can be obtained,' etc., said * * * 'The policy now sued upon contained a positive promise to make the loan if asked, whereas in the one last mentioned [the Dodge Case] it might be held that some discretion was reserved to the company.'"

Construing the clause under consideration in the Dunken Case, the court says: "The terms of the new policy were fixed when the original policy was made. In effect, it is as though the first policy had provided that upon demand of the insured and payment of the stipulated increase in premiums that policy should, automatically, become a twenty payment life commercial policy. It was issued not as the result of any new negotiation or agreement but in discharge of preexisting obligations. It merely fulfilled promises then outstanding; and did not arise from new or additional promises. The result in legal contemplation was not a novation but the consummation of an alternative specifically accorded by, and enforceable in virtue of, the original contract. If the insurance company had refused to issue the second policy upon demand, the insured could have compelled it by a suit in equity for specific performance."

In the light of these decisions, we find no escape from the conclusion that the new contract—the reinsurance of the insured by defendant—was an Illinois contract and governed by the Illinois statutes above quoted. Under these Illinois statutes, defendant was not permitted to limit to one year the time within which an action on the policy was to be brought. Such a provision in an Illinois insurance contract was null and void. It follows that, there being no valid contract provision as to the time within which suit must be brought, the applicable Illinois statutes of limitations apply. And clearly the present action was brought within such a period.

This disposition of the case makes it unnecessary for us to decide the interesting and, we may add, important question involving the conflict of the Iowa and Illinois laws respecting the period of time within which an action must be brought on a matured life insurance policy. The argument that this provision is remedial, and therefore governed by the law of the forum, appeals strongly. In the following cases it has been so held: Hornick v. First Catholic Slovak Union of the United States of America, 115 Kan. 597, 224 P. 486; Galliher v. State Mutual Life Ins. Co., 150 Ala. 543, 43 So. 833, 124 Am. St. Rep. 83. But the assured's lapse of his policy and its reinstatement by the Illinois company present fact situations which make it unnecessary for us to decide this last question.

The judgment is affirmed.