NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 20 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AMERITAS LIFE INSURANCE CORP.,

Plaintiff-Appellant,

v.

WILMINGTON TRUST, N.A.,

Defendant-Appellee.

No. 24-6801

D.C. No.
2:24-cv-02437-SVW-RAO

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted February 9, 2026
Pasadena, California

Before: WARDLAW, M. SMITH, and BADE, Circuit Judges.
Dissent by Judge WARDLAW.

Ameritas Life Insurance Corp. appeals from the district court's dismissal of

its complaint for declaratory judgment against Wilmington Trust, N.A. The

complaint alleges that a life insurance policy Ameritas issued to Wilmington is void

for lack of an "insurable interest" in the life of the insured, Amir Moghadam. The

district court rejected that theory as a matter of law. We have jurisdiction under 28

U.S.C. § 1291, and we reverse.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

The parties are familiar with the facts, so we do not recount them here except where necessary for context. When a district court dismisses a case under Federal Rule of Civil Procedure 12(b)(6), we "evaluate the complaint de novo to decide whether it states a claim upon which relief could be granted." *Gonzalez v. Metro. Transp. Auth.*, 174 F.3d 1016, 1018 (9th Cir. 1999). In so doing, we "must accept as true all factual allegations in the complaint." *Retail Prop. Trust v. United Bhd. of Carpenters*, 768 F.3d 938, 945 (9th Cir. 2014).

1. The district court erred in holding that the permanent life insurance policy Ameritas issued to Wilmington in 2024 (the Permanent Policy) was a "continuation" of the term life insurance policy that Ameritas issued to Moghadam in 2004 (the Term Policy).[1] These policies are distinct contracts.

"Insurance policies are contracts and, therefore, are governed in the first instance by the rules of construction applicable to contracts." *John's Grill, Inc. v. The Hartford Fin. Servs. Grp.*, 552 P.3d 1045, 1053 (Cal. 2024) (citation modified).[2] "As with all contracts, 'the mutual intention of the parties at the time the [policy] is

---

[1] A "term" policy is one that lasts for a set duration. A "permanent" policy is one that persists as long as the owner pays the premiums.

[2] In a diversity action like this, our task "is to approximate state law as closely as possible." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001). The parties agree that California law governs the Term Policy. And while they dispute the state law that governs the Permanent Policy, as discussed below, we need not resolve the issue.

formed governs interpretation.'" *Hameid v. Nat'l Fire Ins. of Hartford*, 71 P.3d 761, 764 (Cal. 2003). If possible, the parties' mutual intent must be inferred "from the writing alone." Cal. Civ. Code § 1639. We must read the policy language "in context," and "give effect to every part of the policy with each clause helping to interpret the other." *John's Grill*, 552 P.3d at 1053 (citation modified).

The Term Policy sets forth Ameritas's and Moghadam's mutual intention on whether converting the Term Policy would create a distinct contract: in the conversion provision, they agreed that conversion would create "a new single life policy,"[3] that the premium rate would be updated, and that the "*policy date* of the new policy will be the date of conversion." A "policy," in this context, is a "written instrument[] in which a contract of insurance is set forth." Cal. Ins. Code § 380. By creating a "new policy," then, the parties agreed that conversion would create a *new* "contract of insurance." *Id.*

The Term Policy's integration clause further supports this construction. It defines the "ENTIRE CONTRACT" as "[t]his policy, the written application, a copy

---

[3] The district court deemed this language ambiguous, finding the words "converted" and "new" contradictory. But "[t]he mere fact that a word," such as "converted," might have "multiple meanings does not create an ambiguity," as its "meaning . . . must be considered in light of its context." *John's Grill*, 552 P.3d at 1053. The context here dispels any ambiguity. We agree with the district court that "converting" a thing retains some aspect of its original character; but it nevertheless creates something "new" in other respects. To pick up on the district court's example, "converting" a store into a restaurant might not produce a "new" structure, but it indeed produces a "new" restaurant. These terms are reconcilable.

of which is attached, and any riders," thus excluding any new policy that may follow conversion. "[W]hen the parties to an agreement incorporate the complete and final terms of the agreement in a writing, such an 'integration' in fact becomes the *complete* and final contract between the parties." *Alling v. Universal Mfg. Corp.*, 7 Cal. Rptr. 2d 718, 731–32 (Cal. Ct. App. 1992) (emphasis added). California law similarly provides that every life insurance policy delivered in California "shall . . . be deemed to constitute *the entire contract* between the parties," and that no separate writings "shall be incorporated therein" unless "indorsed upon or attached to the policy." Cal. Ins. Code § 10113 (emphasis added).

The plain language of Wilmington's application for conversion confirms that the Term Policy and the Permanent Policy are separate life insurance policies: Wilmington requested that Ameritas "Cancel" the Term Policy and issue "a new policy" on Moghadam's life "in lieu of" the Term Policy, with a new, updated "Effective Date." "To 'cancel' a contract means to abrogate so much of it as remains unperformed," *Young v. Flickinger*, 252 P. 516, 517 (Cal. Dist. Ct. App. 1925), and "in lieu of" means "instead of or in place of." *In lieu of*, BLACK'S LAW DICTIONARY (12th ed. 2024). Thus, Wilmington asked Ameritas to "abrogate" the Term Policy and replace it with a new policy, bearing a new effective date. Ameritas's complaint asserts that it granted that request when it "terminated the [Term] Policy" and "issued the [Permanent] [P]olicy." At this juncture, we "must accept" this allegation "as

true." *Retail Prop. Trust*, 768 F.3d at 945.

The Permanent Policy lends further support to the conclusion that the Term Policy and Permanent Policy are separate insurance policies. Not only does the Permanent Policy bear a new policy number, but it also has an "Issue Date"—defined as "[t]he date on which the policy begins"—of "February 15, 2024."[4] Like the Term Policy, the Permanent Policy has an integration clause of its own that defines the "ENTIRE CONTRACT" to exclude the other policy. "[A]n integrated contract [] supersede[s] all prior understandings" between the parties on the subject matter. *EPA Real Est. P'ship v. Kang*, 15 Cal. Rptr. 2d 209, 212 (Cal. Ct. App. 1992). Furthermore, the Permanent Policy contains several "substantial differences" from the Term Policy, including the premiums' amount and frequency, the policyholder's discretion to change coverage, and the policyholder's ability to secure loans against the policy.

Although similarities between the policies also existed, and the Permanent Policy was issued "pursuant to" Wilmington's exercise of the conversion privilege

---

[4] Although the Permanent Policy's suicide and incontestability provisions relate back to the Term Policy's 2004 effective date, that does not mean the entire Permanent Policy also relates back. The Permanent Policy's 2024 effective date precludes this construction. And "the maxim *expressio unius est exclusio alterius—* the expression of one thing is the exclusion of another"—undermines it. *Arntz Builders v. Super. Ct.*, 19 Cal. Rptr. 3d 346, 353 (Cal. Ct. App. 2004). Applied here, the Permanent Policy's "expression" that just two of its terms relate back to the Term Policy's effective date "exclu[des]" all remaining terms from relating back in the same manner.

in the Term Policy, these features do not allow us to ignore the plain language of the policies or the binding California law that governs them.[5] Nor do these features require us to adopt the holding of *Aetna Life Ins. Co. v. Dunken*, 266 U.S. 389 (1924), which Wilmington and our dissenting colleague rely on. To the extent *Dunken* sounds in contract law, it amounts to federal common law, which did not survive *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *See In re County of Orange*, 784 F.3d 520, 530 (9th Cir. 2015) ("There is no general federal law of contracts after *Erie*.") (citation modified). *Dunken* is thus persuasive authority at best, unlike California's controlling "rules of contract interpretation." *Id.* In any event, *Dunken* relies heavily on the facts, which are distinguishable from this case. *See* 266 U.S. at 394–400. There is no indication in *Dunken*, for instance, that either policy contained an integration clause or that controlling law required the Court to treat each policy as "the entire contract between the parties." *Compare id. with* Cal. Ins. Code § 10113.

Ultimately, we do not rely on the conversion cases cited by the parties or the

---

[5] We agree with our dissenting colleague that the conversion privilege formed part of the "benefit" of Moghadam's "original bargain" when entering the Term Policy. But it does not follow that we must regard the Term Policy and the Permanent Policy as one and the same to protect that benefit. Nothing prevented Moghadam from exercising the conversion privilege himself, thereby realizing this benefit, for he had an insurable interest in his own life. Cal. Ins. Code § 10110.1(b). As we explain below, the problem is that Wilmington—the party that actually exercised the privilege—had no such interest.

district court. None is binding. None is squarely analogous. And none considers the principles of California contract and insurance law that govern our analysis.

2. Having concluded that the Term Policy and Permanent Policy are distinct contracts, we must address Ameritas's challenge to the latter's validity. Whether California or Delaware law controls,[6] the outcome is the same: the Permanent Policy is void. In California, a life insurance policy is void if the policyholder lacks an insurable interest in the insured when the policy "takes effect" or "becomes effective," Cal. Ins. Code §§ 286, 10110.1(f), for such a policy is an illegal "wager on the life of the [] insured," *Jimenez v. Prot. Life Ins. Co.*, 10 Cal. Rptr. 2d 326, 330 (Cal. Ct. App. 1992). The same is true in Delaware: "if a life insurance policy lacks an insurable interest at inception, it is void *ab initio* because it violates Delaware's clear public policy against wagering." *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059, 1067–68 (Del. 2011) (footnote omitted); *accord* 18 Del. Code § 2704(a). But by Wilmington's own admission, it lacked an insurable interest in Moghadam's life when the Permanent Policy took effect. The Permanent Policy is thus void. *Jimenez*, 8 Cal. App. 4th at 536; *PHL Variable Ins. Co.*, 28 A.3d at 1067–68.

\* \* \*

---

[6] *See supra* note 2. This court "need not decide" choice-of-law issues where the law of both states in consideration yield the same outcome. *See, e.g., Gianaculas v. Trans World Airlines, Inc.*, 761 F.2d 1391, 1393 (9th Cir. 1985).

We **REVERSE** the order of the district court and **REMAND** for further proceedings.

WARDLAW, J., dissenting:

I would affirm the district court's dismissal of Ameritas Life Insurance Corp.'s complaint. The permanent life insurance policy Ameritas issued to Wilmington Trust, N.A in 2024 (the Permanent Policy) was a continuation of the term life insurance policy that Ameritas issued to Amir Moghadam in 2004 (the Term Policy), and therefore the Permanent Policy is not void.

1. The Permanent Policy provided the insured with the benefit of his original bargain. The Term Policy contained a "conversion option" by which the insured, Moghadam, could convert the policy into a Permanent Policy "without evidence of insurability." As the district court explained, this conversion option is "advantageous to the insured because it sometimes allows the insured to receive a permanent policy at a lower price than they otherwise would" because the insured need not complete a new medical exam. *Ameritas Life Ins. Co. v. Wilmington Tr., N.A.*, No. 2:24-CV-02437-SVW-RAO, 2024 WL 4402028, at *1 (C.D. Cal. Oct. 3, 2024). Thus, "the conversion privilege" makes a "term life insurance policy more valuable" than it would be without the conversion option.[1] *Id.* at *8. Moreover, the Term Policy specified the requirements for conversion and the manner for

---

[1] The conversion option likely therefore increased the resale value of the Term Policy, as the purchaser, Wilmington, bought Moghadam's Term Policy with the understanding that Wilmington could convert the Term Policy to a Permanent Policy after purchase.

1

determining the cost of the Permanent Policy, so no future agreement was required for conversion. And the Permanent Policy explains that it is a conversion of the Term Policy and that the suicide and incontestability provisions relate back to the Term Policy. This is because it would not make sense to have new suicide and incontestability provisions since the Permanent Policy is not a new, separate, and independent policy, but rather a continuation of the Term Policy.

In *Aetna Life Ins. Co. v. Dunken*, the Supreme Court explained that a "subsequent contract" will "be regarded as . . . a continuation [of the original contract] and in effect the same" when "[t]he second policy [] was issued in pursuance of, and was dependent for its existence and its terms upon, the express provisions of the contract contained in the first one" and "[n]othing was left to future agreement." 266 U.S. 389, 395, 399 (1924). Here, the Permanent Policy "was issued in pursuance of, and was dependent for its existence and its terms upon, the express provisions of" the Term Policy. Therefore, the Permanent Policy is best viewed as a continuation of that Term Policy. *Id.* at 399.

2. Because the Permanent Policy is a continuation of the Term Policy, the Permanent Policy is valid. In both California and Delaware, a life-insurance policy lacking an insurable interest is void only if that interest was missing when the policy took effect. *See* Cal. Ins. Code §§ 286, 10110.1, 10130; *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Tr.*, 28 A.3d 1059, 1067–68 (Del. 2011); 18 Del. Code

2

§ 2704(a).  Because Moghadam had an insurable interest in his own life when the Term Policy took effect in 2004, and the Permanent Policy is a mere continuation of that Term Policy, the Permanent Policy is not void.

I respectfully dissent from the majority's decision.