MARK LYTHGOE *v.* JANE SMITH, Impleaded, etc., Appellant;
SYLVESTER L. H. WARD, Respondent.

Where, by the judgment in a partition suit, a portion of the proceeds
of a sale of the property is directed to be paid to one of the parties,
who is a non-resident, and upon application to the court to authorize
payment to be made to the attorney of said party, said attorney presents
a power of attorney executed by his principal, duly authenticated and
acknowledged, authorizing him to receive the money, which facts are
undisputed, and there are no suspicious circumstances surrounding the
application, it is the duty of the court to direct payment as provided
for in the power, and a refusal to make such a direction is a denial of a
legal right, and is reviewable here.

(Argued December 11, 1893; decided December 19, 1893.)

APPEAL from order of the General Term of the Supreme
Court in the first judicial department, made November 6,
1893, which affirmed an order of Special Term directing the
respondent, Sylvester L. H. Ward, as referee in this action, to
pay to the defendant, Jane Smith, the share to which she was
entitled in the proceeds of sale of certain real estate.

The plaintiff commenced this action for the partition of cer-
tain real estate in the city of New York, of which one James
Linden died seized. The defendant, Jane Smith, was a devi-
see of a portion of such real estate, and was called Jane Lego
in the will. The plaintiff obtained an order for the service of
the summons upon her by publication, as a non-resident of this
state, she being a resident of the city of Aukland, in the col-
ony of New Zealand.

The judgment roll in the action contains an affidavit, properly
authenticated, proving the actual personal service of a copy of
the summons and complaint upon Mrs. Smith at Aukland, on
the 17th of November, 1891. The attorney for Mrs. Smith, who
appeared for her in this action, makes an affidavit in which
he says that after the service of the summons and complaint
upon her, the defendant, Mrs. Smith, immediately sent the
same to him. A hearing or trial of the action was had, and
upon the trial the plaintiff was sworn and said he had had a

letter from Mrs. Smith from Aukland about two months before that time; that he had frequently sent letters to her, and that she was his sister, and that he addressed the letters to her as Jane Smith, Aukland, and put a street address upon the letter, but that he had then forgotten it. A portion of the testimony of Jane Smith, taken in another action before the United States consul in Aukland, was read in evidence in this case without objection. The referee herein found that Jane Smith was the half sister of the deceased testator Linden, and was named in the will as Jane Lego, and is now the wife of Richard Smith, and resides in Aukland, New Zealand.

Judgment for a sale of the premises sought to be partitioned was finally entered, and the real estate was sold under decree of sale, and the share of the defendant, Mrs. Smith, in the net proceeds of the sale was found and determined to be $16,347.49. The referee has paid to the attorney at law for the plaintiff his share of the proceeds of the sale.

It also appears that there has been considerable litigation concerning the subject of this action, and the attorney for Mrs. Smith received from her and her husband a full power of attorney for them and in their name to, among other things, receive the money belonging to Mrs. Smith or her husband under or by reason of the said will. The attorney says he has acted upon such power of attorney ever since he received it in 1890, and he has been in constant and uninterrupted communication with Mrs. Smith through her representative in Aukland, and he says she is over seventy years of age, and in his judgment she is unable to take a long sea voyage.

This power of attorney was produced and appears to have been signed, sealed and delivered by Mrs. Smith and her husband in presence of the United States consul at Aukland, and acknowledged before him by both of them, and he certified that he read the paper over to her and that she understood the same and that they were both personally known to him and known to be the same persons who executed the power. This certificate was signed by the consul and authenticated by the seal of the consulate.

After the referee had sold the premises and received the money, the person named in such power of attorney, being also the attorney at law for the defendant, Mrs. Smith, in this action, produced the power of attorney before the referee and asked him to pay over the money belonging to Mrs. Smith to him as attorney in fact and as a person duly and properly authorized to receive the same for her. The referee, while not denying any of the facts above set forth, did not admit them. He, therefore, made a certificate stating that he was unwilling to take the responsibility of paying over the money on the faith of this power of attorney and he asked the direction of the court. Upon that certificate an order to show cause was granted requiring the defendant, Mrs. Smith, or her attorney, to show cause why the referee should not be directed to pay Mrs. Smith's share into court or to pay it to the chamberlain of the city of New York. Upon the hearing of the motion, the facts above stated appeared, and the power of attorney was again produced and, together with the affidavit of Mrs. Smith's atttorney, was filed. The court directed the sum to be deposited with the chamberlain of the city of New York, and that his receipt should be sufficient to discharge the referee. It was further ordered that Mrs. Smith, or her attorney in fact, or any other person making claim thereto, might apply to the court at the foot of the decree or otherwise, to establish any right or claim which they may have in the fund or in any part of it.

*Isaac N. Miller* for appellant. Payment to the attorney in fact is payment to the party. (Story on Agency, § 6 ; Pars. on Cont. 39.) The power of attorney, which was before the court, was evidence of its proper execution, and the certificate of the United States consul was evidence of the identity of the parties executing the same. (*Sudlow* v. *Warshing,* 108 N. Y. 522; Code Civ. Pro. §§ 935, 937; 1 R. S. 757, § 6; Laws of 1883, chap. 80 ; 1 R. S. 757, § 7; *Lerche* v. *Brasher,* 104 N. Y. 162.) The court had no jurisdiction to make such an order. (Black on Judg. §§ 184, 241 ; *McKenna* v. *Duffy,*

19 N. Y. Supp. 248; Code Civ. Pro. §§ 1563, 1568, 1570, 1579, 1580 ; *Stilwell* v. *M. L. Ins. Co.*, 72 N. Y. 391; *Race* v. *Gilbert*, 102 id. 298.) The final decree fully established Jane Smith's rights. (Freeman on Judg. [3d ed.] § 24; *The Palmyra*, 10 Wheat. 4; *Teaff* v. *Hewitt*, 1 Ohio St. 511; *Beebe* v. *Russell*, 19 How. [U. S.] 285.)

*Sylvester L. H. Ward* for respondent.

*Per Curiam.* The power of attorney was duly proved in this proceeding. (Code Civ. Pro. §§ 935, 937 ; 1 Rev. St. 757, § 6, as amended by chap. 80, Laws of 1883.) It was ample authority for the payment of the money to the person named therein as attorney in fact. That person produced it and made the demand. The judgment provided for the payment of the money to Mrs. Smith. This of course meant to Mrs. Smith or to any one whom she might legally and properly authorize to act for her.

Upon all the facts of this case, which are uncontradicted and which are above stated, we fail to see anything which would justify a court in refusing to direct a payment to be made on this power. The court has ordered the money to be deposited with the chamberlain, and such deposit necessarily results in the further expense of the chamberlain's fees and fees to counsel for taking proceedings to obtain payment from the chamberlain. This added expense should be avoided if it can reasonably be done. We are unable to see what more proof the defendant, Mrs. Smith, could produce unless she came over in person.

Upon the uncontradicted facts as they appear there can be no rational doubt that the Mrs. Smith who signs the power of attorney, is the same Mrs. Smith who appears as defendant in this action. It cannot be doubted that she understood the nature and purpose of the power. Its authenticity is fully proven and is not denied. What more could be done to estab-lish the right of the person named in the power to receive the money? If it be said a later power should be proved, it may properly, as we think, be asked, why? The present one is

a, full and complete authority, and by the proof it is clear it was made with special reference to litigation about this very property and to the fact that moneys belonging to Mrs. Smith might be paid in actions at law, and the attorney was specially authorized to give receipts and acquittances therefor. Since the execution of the power it has been acted upon by the attorney, and he has been in constant communication with Mrs. Smith through her representative at Aukland, and the plaintiff, but two months before his examination in this case, had himself received a letter from the defendant, his sister, and there is no assertion or suspicion of her death so far as this record shows. Being sufficient when given, and there being no assertion or anything to arouse suspicion of death or that the grantor of the power has withdrawn or in any manner revoked it, why should another be demanded? By the time it would reach this country and the money demanded and paid under it, Mrs. Smith might at that moment be dead. Such a possibility of death must of course exist under any circumstances, but all action cannot be suspended by reason of it. The bodily presence of Mrs. Smith to demand and receive her money ought not to be exacted.

Where a power of attorney is produced to a referee, duly authenticated and acknowledged, it may be prudent to obtain the sanction of the court to recognize and make payment thereon, but when application for such authority is made and the facts appear as in this case, and they are wholly uncontradicted, and there are no suspicious circumstances surrounding the application, we think it is the duty of the court to authorize and direct the payment as provided for in the power, and the refusal to make such direction is the denial of a legal right.

We should undoubtedly refuse to interfere with the order of the court below in any case where the material facts were not in substance admitted or where there was any ground for suspicion regarding the power or the manner of its procurement. In this case we think the attorney made out a legal right to receive the money.

The order must, therefore, be reversed and an order entered directing the referee to make the payment to the attorney in fact upon the production of the power of attorney and filing the same with the referee.   No costs allowed to either party.

All concur.

Ordered accordingly.