William E. Fitzsimmons, J.
(dissenting). With the majority decision herein, as well as the reasons advanced in support thereof, I am not in accord.
If, as therein indicated, claimant was under obligation to literally conform with all statutory provisions and personally execute petition, then, necessarily, further discussion must prove unavailing.
Believing that section 127 of the Alcoholic Beverage Control Law is remedial in nature, I feel that it should be liberally construed. Against the background of facts herein we may then reach ‘ ‘ conclusions which are in the spirit though not within the letter of the text ” and, in consequence, right a wrong, which otherwise, claimant must unjustly suffer.
As pointed out in the majority opinion, this court has jurisdiction of the claim. That jurisdiction is exclusive. Claimant could neither seek correction of the ‘1 error ’ ’, nor petition for a review of the authority’s ruling herein, the matter not being among the five designated ones subject to such review under the provisions of section 121 of the Alcoholic Beverage Control Law.
Having jurisdiction, we are called upon to act as to all matters involved. (Ehde v. State of New York, 260 App. Div. 511, 513.)
The question of refund herein under discussion appears not to have been previously passed upon judicially, nor directly covered in any of the numerous opinions on the subject rendered by the Attorney-General.
Recital of a few facts, supplemental to those set forth in the majority opinion, may prove of assistance:
Claimant’s son, as duly authorized attorney in fact — as to which there is no question — acted for his father in the surrender of liquor license, and sale of claimant’s restaurant business. Claimant’s then illness necessitated the son’s assistance. As indicated, the authority had no knowledge of such power of attorney.
The visit to authority’s office was made within a half hour of the closing hour on a Saturday morning. Upon hearing the clerk in charge call out “ Valenza ”, claimant’s son stepped up and was directed, “ Sign here ”. The son’s testimony — standing unrefuted — is, “ they were closing up at the time and they were in a hurry themselves to let me sign it ’ ’. Failure to complete verification has been attributed to inadvertence, attendant upon hurried conditions.
*133 Subsequently, at the authority’s request, petition was corrected and claimant surrendered previously issued “ due receipt ” for $485. Only after actual surrender thereof was claimant advised refund was to be reduced.
The petition originally filed was so complete as to make further examination unnecessary on the part of the State or police officials concerning either taxes or law violations.
No question is raised by the State that claimant or his son acted either with evil purpose or intent to mislead; nor has the State made any effort to establish that it has been prejudiced as to a substantial — or any — right, nor to refute or attempt to justify its retaining of claimants’ refund over the same period of time for which it'collected and still retains the full license fee received from claimant’s vendee, covering the identical premises for full unexpired term of license so surrendered.
The State’s defense rests upon the proposition that 11 If claimant’s contention in this case were to prevail, it would mean the end of orderly conduct of business. ’ ’
Claimant is entitled to an award herein on the grounds:
(a) The State is at least equally responsible with claimant for “ error ” herein; the mistake should be treated as a mutual one;
(b) a liberal construction of section 127 will disclose that claimant met all of its requirements; and
(c) the “ error ” is one which we may and should disregard under the provisions of section 105 of the Civil Practice Act.
The State stresses claimant’s mistake. It overlooks its own, possibly greater fault, through its remissness in failure to make a careful and timely check of its own records concerning claimant’s age and signature, given under oath and failed in its office, in accordance with the provisions of section 110 of the Alcoholic Beverage Control Law. The youthful appearance of claimant’s son and his signature, would readily have appeared at variance both with his father’s recorded age and signature. Had time then pressed, claimant’s son should have been requested to return another day. The term “ orderly conduct of business ” as applied to public offices, certainly carries implication of more than continuance of undisturbed routine for the office personnel.
The mistake was a simple and understandable one which could have been expeditiously corrected.
Such mistake should be treated as a mutual one and the subsequently filed, corrected verified petition accepted nunc pro tunc as of the date of license surrender.
*134 Concerning refund statute construction, the Attorney-General has indicated that it “is remedial in its nature, and as such, should be liberally construed to effectuate the purpose for which it was enacted ”. (1937 Atty. Gen. 163, 164.)
Further, the Attorney-General, in passing upon the subject of refunds due upon surrender of a liquor warehouse permit, concluded his opinion in the following words: “ Section 127-a directs that the procedure with reference to the payment of refunds and notice to police officials shall be as nearly as possible the same as outlined in section 127. In my view, this has reference purely to matters of procedure and not to computation of refunds.” (1936 Atty. Gen. 191.)
Necessarily, a refund may not be computed until surrender of a license or permit has been had since “ a verified petition ” in and of itself may not start such an operation. Section 127 provides for computation from that “ date when [license] surrendered for cancellation”. Context of the words “ cancellation and refund ”, as used in section 127, make it appear that upon date of cancellation, a refund then becomes due. Under such conditions petition provided to be filed simultaneously with surrender of license would appear to be of secondary, rather than of equal importance with the act of surrendering of license. An incomplete petition, therefore, if replete with all required information and timely filed — as in the instant case, should not at all affect the date from which computation, based upon license surrender, is to be made.
Such construction seems consonant with the title of section 127, “ Surrender and cancellation of licenses; payment of refunds; notice to police officials ”, “a circumstance [heading] not to be disregarded in the interpretation of the statute ” (Broderick v. Weinsier, 253 App. Div. 213, 219, affd. 278 N. Y. 419).
An examination of the policy of the State and the purpose of chapter 478 of the Laws of 1934 (Alcoholic Beverage Control Law) as set forth in section 2 thereof, discloses nothing contrary to the reasoning outlined.
The essence of such stated purpose is to foster and promote temperance. The means adopted and the ultimate objects sought are stated to be, ‘‘ The restrictions, regulations and provisions contained in this chapter are enacted by the legislature for the protection, health, welfare and safety of the people of the state.”
The withholding by the State of a part of claimant’s refund will in no wise advance the cause of temperance or effectukte the ultimate purposes so recited.
*135 License fees, of course, are not considered as relating to the profit motive. Equally, the State’s position is not fortified by adding to the force of the authority’s lawfully issued orders, since, for all practical purposes, all peace officers of the State are of its own personnel.
In passing upon the statute under consideration, (concerning a question not here at issue), it was held in People v. Ryan (274 N. Y. 149,152-153): “ The definite, fixed and expressed purpose of the Legislature was to regulate and control the manufacture, sale and distribution of alcoholic beverages. ’ ’
None of such questions are involved in the instant case.
At page 152 of People v. Ryan (supra) the opinion is expressed that in the interpretation of this act the intent of the Legislature is to be sought beyond the literal meaning of the words used and its results tested from a common-sense standpoint.
Claimant’s son, in my opinion, had authority to verify claimant’s petition and receive “ due receipt” on his behalf. Section 127 of the Alcoholic Beverage Control Law, by its terms, neither excludes an agent’s so verifying, nor directs that it be executed by a licensee in person. The provisions relating thereto, I believe, are sufficiently general to have contemplated the performance of such acts, by a duly delegated representative of a licensee.
The right of claimant’s son, by reason of the power of attorney executed in his favor, to receive refund on behalf of claimant, finds support in the decision in Lythgoe v. Smith (140 N. Y. 442).
In the petition herein, claimant’s son averred, as to the matters therein recited, that they were ‘ ‘ true to his own knowledge ’ ’. The State raises no question either as to the accuracy or sufficiency of such facts.
In Betts v. Kridell (20 Abb. N. C. 1, 4) it is stated: “ within his personal knowledge ’ ’ is sufficient without assigning any reason why the verification is not made by the party. (Citing Code Civ. Pro., §§ 525, 526.) Buies 99 and 100 of the Buies of Civil Practice are derived from the sections cited (Storm & Co. v. Migliore & Sons, 130 Misc. 654).
In view of the foregoing, claimant appears to have fully complied with all the requirements of section 127 of the Alcoholic Beverage Control Law, and thereby brought himself within the limits of that construction had in mind by the late former Chief Judge Cullest, when, expressing his ideas on the subject of statute construction, declared, in People v. Abeel (182 *136 N. Y. 415, 424): “ The best test I know of to determine whether a particular construction is natural and reasonable is to consider the results that follow from the particular construction. If those results are unreasonable it is strong proof that the construction which leads to them is unnatural and unreasonable
Furthermore, the ‘ ‘ error ’ ’ herein is one we may and should disregard, in accordance with the provisions of section 105 of the Civil Practice Act, wherein it is provided, “ At any stage of any action, special proceeding or appeal, a mistake, omission, irregularity or defect may be corrected or supplied, as the case may be, in the discretion of the court, with or without terms, or, if a substantial right of any party shall not be thereby prejudiced, such, mistake, omission, irregularity or defect must be disregarded.”
The prosecution of a claim in the Court of Claims is in effect the prosecution of a claim in the Supreme Court and except as otherwise provided, Civil Practice Act provisions and Rules of Civil Practice apply. (Ehde v. State of New York, 260 App. Div. 511, 513-514, supra.) No rule of the Court of Claims denies us full availability of such provisions and rules herein.
This court recently invoked section 105 of the Civil Practice Act through correction of an error antedating filing of claim. (Mackney v. State of New York, 177 Misc. 94, affd. 262 App. Div. 1063.)
Verification herein is incomplete — not defective.
In People ex rel. Durham Realty Corp. v. Cantor (234 N. Y. 507, revg. 201 App. Div. 834), the liberal provisions of statutes regarding errors were invoked to permit substitution of correct name of petitioner in a tax review matter where such error was caused by inadvertence and no substantial rights were prejudiced, in which matter the petition, by statute, was required to be signed and verified only by the party aggrieved. Concerning this decision, it was said in Holzer v. Deutsche Reichbahn-Gesellschaft (160 Misc. 487, unanimously affd. 247 App. Div. 786): “ Since People ex rel. Durham Realty Co. v. Cantor (234 N. Y. 507), the court can cure any defect in aid of justice. All technicalities are swept aside.”
The authorities cited in support of majority decision herein, refer, respectively, to verification of a mechanic’s lien (Matter of Passero & Sons, 237 App. Div. 638), and claim against a municipality for damages resulting from personal injuries (Ponsrok v. City of Yonkers, 254 N. Y. 91), in both of which recovery depends solely upon strict compliance with statutory provisions.
*137 In tlie instant case a reverse situation, it seems to me, is involved. Restrictions herein are exercised by the State as to which it had no inherent rights under the common law, for in the far dim past, the manufacture, sale and distribution of liquor was limited only by one’s desires, inclinations and means.
Regardless of the underlying purpose of “verification” in the instances cited — to prevent the filing of false claims — there is no basis for assuming that the same purposes are sought to be served by a verification herein, since the issuance and subsequent surrender of license are not subject to falsification, and the subject matter of unpaid State taxes and law violations are matters of public record as to which the authority is charged with conducting investigations.
In Ponsrok v. City of Yonkers (supra, p. 93), verification was not signed at all. The notary’s signature and seal only appeared, a situation far more glaring than error in instant case — yet concerning it the court said: “If the ignorance and incompetency of the notary in failing to have the affidavit of verification subscribed by the claimant had resulted in a mere technical deviation from the classic form of an affidavit, the irregularity might be overlooked.” It appears that the resultant 1 ‘ error ’ ’ herein is a technical deviation which not only “ might be overlooked ”, but should be disregarded.
In People ex rel. Denney v. Clark (257 App. Div. 905), the court held that despite a faulty petition by reason of a defective verification, the defect was one subject to correction, and should be disregarded; it was further said, ‘ ‘ A verification adds nothing to a petition ”.
Claimant has no alternative means of ‘ ‘ correction ’ ’ other than are herein available.
In People ex rel. New York City Omnibus Corp. v. Miller (282 N. Y. 5), plaintiff was upheld in a tax review matter, where president of petitioning corporation failed to sign verification, as required to do by statute. Herein, incidentally, the court took occasion to differentiate between decision in Ponsrok v. City of Yonkers (supra, pp. 8, 9) as applying to a- claim against a municipality, which must conform to the method provided by statute, and a tax review matter (which is remedial in nature). Equally, such decision should not apply herein.
In Mechanics Lbr. Co. v. Cohen (173 Misc. 605, 606, 607, unanimously affd. without opinion 260 App. Div. 863), wherein a receiver failed to “subscribe and take ” the statutory oath before entering upon his duties, as required by section 126 of the Civil Practice Act, it was held, “ the omission * * # *138 may be regarded as a mere inadvertence ”. As in instant case the petition was on file — so in cited case, oath was on file.
Further, error herein should be disregarded in view of the attitude of the courts to “ look with tolerance upon errors and defects * * * if they may be rectified without affecting substantial rights ’ ’ (Allen v. Fink, 211 App. Div. 411, 412, 415); to give a “ liberal and common sense interpretation ” to section 105 of the Civil Practice Act (Liggett Co. v. Broadway-John St. Corp., 220 App. Div. 195, 196) and that “ any defect in aid of justice ” is curable (Holser v. Deutsche Reichsbahn-Gesellschaft, 160 Misc. 487, supra).
Claimant, in my opinion, is entitled to an award in the sum of $485, with interest from October 28, 1940.
Gbeenberg, J., concurs with Babbett, P. J.; Fitzsimmons, J., dissents in opinion.