Jan **DANISCH, Antoni Danisch, Julia Danisch, Anna Schwientek, Gertrud Wojtcyzk, Emma Schweda, Sofia Janta, Jadwiga Salawa, Maria Stancyzk, Luiza Lesch and Gertrude Urganek, Plaintiffs,**

v.

The **GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,** Defendant.

United States District Court
S. D. New York.
March 13, 1957.
Supplemental Opinion April 18, 1957.

18

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiffs.

Walters & Donovan, New York City, for defendant.

EDELSTEIN, District Judge.

In an action on certain policies of insurance and supplementary contracts issued by the defendant on the life of a decedent who died in the United States, the plaintiff beneficiaries move for summary judgment. The defendant has filed a motion labeled as a cross-motion for summary judgment. The defendant has admitted the issuance of the policies and supplementary contracts; it has admitted the death of the insured and that it was notified and received proof of his death from beneficiaries residing in the United States; and it has further admitted non-payment to the plaintiffs in this action. Thus, the policies of insurance themselves are not in dispute nor is the liability of the defendant to the named plaintiffs.

But the defendant does resist payment to these beneficiaries, who are residents and citizens of the Polish People's Republic. It denies the authority of the plaintiffs' attorneys to institute this action on their behalf, on the ground that no faith or credence can be given to such an authorization as free and voluntary when it originates in a Communist police state. And in any event, it is alleged, there is not a reasonable assurance or likelihood that the plaintiffs would actually receive or have the benefit or use or control of the insurance pro-

ceeds if the money were to be transmitted to them or to persons purporting to represent them. Accordingly, the defendant urges as an alternative to dismissal that, pursuant to sections 474 and 978 of the New York Civil Practice Act, it be authorized to deposit the funds in court for the benefit of the persons entitled to them, until such time as they can be assured of actual receipt or beneficial use of the money.

■ Both of these issues are raised by the defendant in what purports to be a cross-motion for summary judgment. But a summary judgment, under Rule 56, Fed.Rules Civ.Proc. 28 U.S.C.A., deals with the merits and results in a judgment in bar. See 6 Moore's Federal Practice (2nd ed.) par. 56.03, page 2025. The defendant does not seek a judgment in bar, but a judgment in abatement, without prejudice, on the ground that the court has no jurisdiction to proceed because the plaintiffs have, in fact, commenced no action against the defendant. Accordingly, the motion will be treated as a motion to dismiss under Rule 12, and inasmuch as a threshhold issue of jurisdiction is presented, it must be considered first.

■■ It has long been well settled that an appearance by a practicing attorney creates a presumption that he has authority to act and the law casts the burden of proving the contrary upon the one asserting it. Osborn v. President, etc., Bank of United States, 9 Wheat. 738, 829, 830, 6 L.Ed. 204; Hill v. Mendenhall, 21 Wall. 453, 454, 22 L.Ed. 616; Paradise v. Vogtlandische Maschinen-Fabrik, 3 Cir., 99 F.2d 53, 55; Booth v. Fletcher, 69 App.D.C. 351, 101 F.2d 676,

683; In re Gasser, 8 Cir., 104 F.2d 537, 538; In re Pearl Coal Co., 3 Cir., 115 F. 2d 158, 159; Bowles v. American Brewery, 4 Cir., 146 F.2d 842, 847. In its attempt to meet that burden of proof, the defendant sets forth that counsel acting for plaintiffs have no direct authority from them. That point is conceded, inasmuch as counsel are proceeding under the authority of the Polish Consul in Chicago and his successor, to whom plaintiffs have purported to give powers of attorney.[1] It is argued, however, that the powers of attorney ought not to be given recognition or effect. For, it is asserted, following the death of the insured, the defendant forwarded to his beneficiaries in Poland its printed form of "Claimant's Statement". These statements were never returned to the defendant. Instead, the defendant received communications from the then Consul of the Polish People's Republic in Chicago forwarding the powers of attorney and the protocol or transcript of the court proceedings in Poland following which they were executed by the plaintiffs. From this it is argued that the primary moving force behind this action and the real plaintiff is the Communist government of Poland, not the named beneficiaries, and the powers of attorney must have been obtained from the plaintiffs by a police state mass court proceeding, to which they were summoned.

The defendant's conclusion proceeds from an evaluation of conditions prevailing under a government in a Communist country, an evaluation of which this court requires no persuasion. But valid as it may be, the evaluation falls short of providing evidence on the specific

---

1. Counsel for plaintiffs produced three documents purporting to be powers of attorney. One dated May 12, 1953 and another dated May 30, 1953 name the Polish Consul in Chicago, Illinois, or his substitute, attorney for plaintiffs to collect the insurance proceeds that are the subject of this action. Both of these powers bear signatures purporting to be those of the plaintiffs, affixed as a part of a court proceeding in which they were summoned to appear, and "Authenticated" by the American Vice-Consul in Warsaw. The third document, dated April 6, 1955 and executed and acknowledged on that day by the Chief of the Consular Division of the Embassy of the Polish People's Republic, Washington, D. C., purports to be a ratification by that official as successor to the Polish Consul in Chicago, of the authority of the plaintiffs' counsel to institute and prosecute the present action. The summons is dated September 3, 1954.

problem in issue, and only surmise and suspicion remain. I can merely repeat Judge Dimock's words in deciding a previous motion in this case, D.C., 18 F.R. D. 77, 79: "At this time * * * I have nothing but defendant's suspicion and surmise in support of such a conclusion [that the powers of attorney were not voluntarily executed]. The Polish People's Republic is a nation which is recognized by and has diplomatic relations with the United States. I cannot question the validity of these documents on the present state of the record." Nor is that result altered by the existence of the Treasury Regulations [2] pursuant to which United States Government funds will not be paid to persons residing in specified foreign countries, because of a lack of reasonable assurance that the payees will actually receive such funds or be able to negotiate checks or warrants for full value.

The Polish People's Republic is one of the specified countries [3] and an amendment [4] to the regulation provides that powers of attorney for the receipt or collection of such funds will not be recognized. The refusal of the United States Government to recognize powers of attorney from payees of government funds resident in Poland is merely in furtherance of the policy not to transmit such funds to Poland, for the reasons stated. The policy might be contravened by the recognition of even voluntarily given, valid powers of attorney. Thus the regulation itself is not authority for the invalidity of powers of attorney given by residents of the Polish People's Republic. The defendant has failed to meet the burden of proving the lack of authorization of plaintiffs' counsel. Accordingly, the motion to dismiss must be denied.

With the jurisdictional issue decided in favor of the plaintiffs, they are entitled to summary judgment, for there is no defense on the merits. The only question remaining is whether that judgment should be conditioned by the application of sections 474 and 978 of the New York Civil Practice Act. There is no provision in the Federal Rules of Civil Procedure covering the situation, but by Rule 83, the District Court may from time to time make and amend rules governing its practice not inconsistent with the federal rules. By Civil Rule 13 of this court, provision is made for the discretionary application of the procedure prevailing in the Supreme Court of the State of New York, in a situation not covered by the provisions of any statute of the United States or of the Federal Rules of Civil Procedure, where there are no parallels or analogies furnished by such statutes and rules, and in default of a procedure previously prevailing in courts of equity of the United States. See United States v. Certain Land, etc., D.C., 71 F.Supp. 363, 364. This situation would seem to be one where the New York procedure might appropriately be applied.

■■ But the plaintiffs argue that to apply it, by ordering the proceeds of the judgment to be deposited in court for the benefit of the plaintiffs, to be paid out on the special order of the court when they subsequently are able to show that they will have the benefit or use ·or control of the money, would be in violation of the Constitution of the United States. Specifically, it is contended that such statutes so applied would impair the obligation of contracts, in violation of Section 10 of Article 1; [5]

2. Adopted under the authority of Public Law No. 828, approved October 9, 1940, 31 U.S.C.A. § 123 et seq. See section 211.3(a) of Department Circular No. 655, dated March 19, 1941, 31 C.F.R. (1949 ed.) 211.3(a); 6 F.R. 1534.

3. Amendment of February 19, 1951, 16 F.R. 1818, and amendment of April 17,

1951, 16 F.R. 3479, amending 31 C.F.R. (1949 ed.) 211.3(a).

4. Amendment of September 24, 1951, 16 F.R. 10017, amending 31 C.F.R. (1949 ed.) 211.3.

5. Defendant argues that all the contracts involved in the case were issued subsequent to the effective date (June 2, 1939)

would contravene the provision of Section 1 of the Fourteenth Amendment, that no state shall deprive any person of property without due process of law; and would violate the provision of Section 1 of the Fourteenth Amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws.

■ It is, of course, an axiom of constitutional law that a substantial impairment of a means of enforcement is an impairment of the contract obligation. Sturges v. Crowninshield, 4 Wheat. 122, 4 L.Ed. 529; McCracken v. Hayward, 2 How. 608, 11 L.Ed. 397; White v. Hart, 13 Wall. 646, 20 L.Ed. 685; Edwards v. Kearzey, 96 U.S. 595, 24 L.Ed. 793; Bronson v. Kinzie, 1 How. 311, 11 L.Ed. 143; Penniman's Case, 103 U.S. 714, 720, 26 L.Ed. 602. The plaintiffs cite Sliosberg v. New York Life Ins. Co., 244 N.Y. 482, 155 N.E. 749, 751, as authority directly controlling the case at bar. An action had been brought in 1925, prior to United States recognition of the U. S. S. R.; to recover on an insurance policy "expressed to be payable in Russian roubles" and "expressed * * * to be performed in whole or in part within the territorial confines of the former Russian Empire * * * ". An application was made, pursuant to section 169–a of the Civil Practice Act (a section added by Chapter 232 of the Laws of 1926), to stay the action until the expiration of 30 days next following the recognition

de jure of a government of Russia by a government of the United States. The New York Court of Appeals held the statute to be unconstitutional as depriving parties entitled to sue on a contract of a remedy for an indefinite period, that is, until the happening of an event which might never happen.

■ But the Sliosberg case is, I feel, inapposite. Assuming that a deposit of the proceeds of the insurance policies in court should be ordered, there would nevertheless be no denial of a remedy. Judgment, on the contrary, would have been granted the plaintiffs. Nor would there even be a denial or a postponement of the right of plaintiffs to possession of the property. For the court would be acting on a determination that they would not in any event have the "benefit or use or control of such money", and that there were "other special circumstances [making] it appear desirable that such payment * * * should be withheld * * * ", relating to the possibilities of the effectuation of the judgment for the benefit of the plaintiffs. Cases more closely analogous than the Sliosberg case are those involving the distribution of estates. Cf., for example, In re Braier's Estate, 305 N.Y. 148, on page 158, 111 N.E.2d 424, at page 428, and cases cited; In re Weidberg's Estate, 172 Misc. 524, 15 N.Y.S.2d 252. True, these cases are distinguishable on the ground that they involve decedents' estates, over which the state may exercise the power of controlling distribu-

of the challenged sections of the Civil Practice Act. One of the policies and two of the supplemental contracts in suit do bear subsequent dates. However, they were issued in accordance with settlement options contained in policies antedating the enactment of the legislation. They were, accordingly, not new contracts, for their terms were fixed when the original policies were made; they were issued not as the result of any new negotiation or agreement, but in discharge of pre-existing obligations. Aetna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342. That the insured was required to present new evidence of insurability did not alter the pre-existing obligations to insure subject to such new evidence. nor did it convert the discharge

of those obligations into new contracts.

The remaining policy in suit was made after the effective date of the legislation claimed to impair the obligation of the contract. But it was a North Dakota contract, not subject to the New York law when issued. It is argued that inasmuch as the challenged sections did not operate on the contract until suit was brought in New York, they violate the contract clause of the Constitution. In Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926, the Supreme Court left open the issue of whether the guaranty of the contract clause relates to the date of a statute's effect on contracts or to the date of its enactment.

tion, rather than contracts, over which the state's power is limited by the United States Constitution. Nevertheless, the conclusion stated is equally applicable, that the procedure of section 269 of the Surrogate's Court Act (analogous to the procedure of sections 474 and 978 of the Civil Practice Act here involved), "far from constituting an impairment of [plaintiffs' legal] rights, was designed as and in fact is, a potent protector thereof." Matter of Weidberg's Estate, supra, 172 Misc. at page 531, 15 N.Y. S.2d at page 259; In re Braier's Estate, 305 N.Y. at page 158, 111 N.E.2d at page 428. The plaintiffs would have title to the funds; they would be set aside for their benefit and account, and be theirs for the asking when reasonable assurance could be given that they would receive the benefit or use or control of the money, and would, in short, enjoy the possession to which they are concededly entitled. Therefore, I cannot conclude that applying the challenged sections would have the effect of impairing the obligations of contracts. Similarly, inasmuch as there would be no impairment of rights at all, there would be no denial of due process or of equal protection of the laws.

But the exercise of the court's discretion to order the deposit of the proceeds of the insurance policies in court, subject to its further order, depends upon the court's conclusion that the plaintiffs would not have the benefit or use or control of the money, or that there are other special circumstances making it appear desirable that payment should be withheld. The defendant's argument is, essentially, that the court may take judicial notice of the existence in Poland of a Communist government employing police state tactics, precluding the realization of any rights by Polish citizens without special leave from the authorities, and that the right to receive dollar exchange in the Polish People's Republic is precisely the kind of a right which would be preempted and confiscated by the government. In substantiation of this position, affidavits are submitted citing foreign exchange decrees of the Polish government. It is further argued, with supporting affidavits, that even if the plaintiffs were to receive the funds, they would be able to realize only a very small portion of them because of the confiscatory rates of exchange maintained by the Polish government between their currency and the dollar. And finally, the defendant cites the Treasury regulation specifying the Polish People's Republic as one of the countries the residents of which may not be sent United States government funds, because of a lack of reasonable assurance that the payees will actually receive such funds or be able to negotiate checks or warrants for full value.

The general conditions prevailing in a Communist country are indeed of such common knowledge as to require no proof of their fundamental antithesis to the public policy prevailing in our own country. Yet in the absence of proof, it is inadvisable for a court to hold, on the basis of judicial notice alone, that the general conditions negate the specific likelihood that these plaintiffs would receive the proceeds of a judgment. There can, of course, be judicial knowledge of specific circumstances sufficient to justify a decision, see In re Weidberg's Estate, supra; but as distasteful as the court considers the general conditions in Poland to be, he has no judicial knowledge to justify the specific conclusion that these plaintiffs would not receive payment. However, the void of judicial knowledge may be filled by the Treasury Regulation precluding the payment of United States government funds to persons residing in the Polish People's Republic, because of a finding of a lack of reasonable assurance that the payees will actually receive such funds or be able to negotiate checks or warrants for full value. This "authoritative conclusion reached by the Treasury Department" was relied upon for decision in In re Braier's Estate, supra, 305 N.Y. at page 157, 111 N.E.2d at page 428. But in that case there was no denial that conditions in the foreign

country (Hungary) negated the likelihood that the legatee would receive her bequest, and no hearing was sought on the issue. Here, denial is made, supported by affidavits, and a hearing is demanded, although in a roundabout manner; for it is claimed in answer to defendant's cross-motion for summary judgment that a genuine issue of material fact is presented, requiring a trial. The defendant's cross-motion, as indicated, cannot be treated as one for summary judgment, and therefore the raising of an issue of material fact for trial may be treated as a demand for a hearing on the issue of the "defense" that there is not a reasonable assurance that the plaintiffs would actually receive or have the benefit or use or control of the insurance proceeds, if the funds were to be transmitted to them.

Accordingly, the plaintiffs' motion for summary judgment will be granted, but entry of judgment will be held in abeyance for ten days from the date of this memorandum, during which time plaintiffs may apply for a hearing. Failing such an application, the defendant's motion pursuant to sections 474 and 978 of the Civil Practice Act will be granted, appending to the judgment an order requiring the deposit of the proceeds of the judgment in court.

### Supplemental Memorandum

On a motion for reargument, the plaintiffs point out that the opinion omitted mention of the submission, after the argument and while the original motion was under advisement, of new powers of attorney properly authenticated which had been forwarded directly to plaintiffs' counsel by one of the plaintiffs in Poland. These powers were executed by all the plaintiffs except Jan Danisch, Antoni Danisch and Maria Stancyzk. For these three, the original powers remained unrevoked, while the new powers revoked the original powers granted to the Polish Consul.

This memorandum is issued to supply the omission. However, the problem presented and the analysis of the court are in no way altered or affected, and the motion for reargument is denied.