Maxmillan Moss, S.
This is an application by the Consul General of Lithuania at New York, as petitioner, for an order striking out respondents’ power of attorney given by two *672 Lithuanian distributees, who are decedents sisters, and the notice of appearance filed by respondents on behalf of said distributees. Their distributive shares in the meantime have been deposited in the City Treasury in accordance with the accounting decree subject to further order of the court, pursuant to section 269-a of the Surrogate’s Court Act. The issue raised by this application was reserved for determination after a hearing and submission of papers.
Originally the Lithuanian Consul appeared for the foreign distributees as nationals of the Republic of Lithuania. Shortly thereafter there was recorded a power of attorney, executed and acknowledged by said distributees before the United States Consul at Moscow, appointing respondents, a New York law firm, as attorneys in fact for them in this estate. Subsequently a notice of appearance was filed by respondents as attorneys for said distributees, together with an authorization executed in the names of respondents by a member of the firm acting on their behalf by virtue of the power of attorney. If the power of attorney is valid, respondents ’ notice of appearance likewise is valid, supplanting the authority of the Lithuanian Consul to appear for his nationals. If on the other hand the power fails, respondents’ notice of appearance thereunder is unauthorized and petitioner’s appearance remains in effect (Matter of D’Adamo, 212 N. Y. 214; Matter of Zalewski, 292 N. Y. 332; Matter of Reiss, 138 Misc. 845; Matter of Lehmeyer, 122 Misc. 670; Surrogate’s Ct. Act, §§ 41, 63; 3 C. J. S., Ambassadors and Consuls, p. 1026).
The instrument in question is a general power of attorney designed for matters affecting decedents’ estates, printed in the Russian and English languages in parallel columns. In the appropriate blank spaces are typed the principals’ names and addresses by village and district in the U. S. S. R. without mention of Lithuania; the several names under which decedent, their brother, was known; and the name and address of the law firm, respondents, as attorneys in fact. The instrument is dated and signed with the surnames only of the principals and under the English column alone. Annexed to the instrument is a United States ‘ ‘ Foreign Service” form of certificate of acknowledgment by the United States Consul at Moscow certifying that on December 29,1958 the two named principals personally appeared before him and were “ to me personally known, and known to me to be the individuals described in, whose names are subscribed to, and who executed the annexed instrument, and being informed by me of the contents of said instrument they duly acknowledged to me that they executed the same freely and voluntarily for the uses and purposes therein mentioned.”
*673 Petitioner in Ms supporting affidavit alleges that in the instant case the diplomatic officers of the Soviet Union have obtained a power of attorney by Lithuanian nationals to attorneys representing the Soviet government. The affidavit further states: ‘1 What Soviet Russia has not been able to do directly, it is now endeavoring to accomplish indirectly.” Petitioner further alleges that the instrument states the country of residence of the principals as being the U. S. S. R., whereas it is the Republic of Lithuania; that the United States Consul apparently did not know that the principals were residents of Lithuania, and that it is questionable whether he would have taken the acknowledgment had he known that fact.
These objections were further amplified to the effect that the Lithuanian principals are illiterate; unfamiliar with the Russian and English languages; did not comprehend the contents of the instrument; that they travelled from their homes to Moscow on orders of officials of the Soviet Union; that the instrument was executed under duress; and that their representation by respondents was procured and directed by an agency of the Soviet government illegally soliciting legal business for respondents. Petitioner also asks the court to take judicial notice of conditions in countries behind the “Iron Curtain ” restricting the right of persons to choose their own attorneys in fact and at law as their representatives abroad. Reliance is further generally placed upon the foreign policy of the United States which does not recognize the incorporation of the Baltic countries into the U. S. S. R. and the Soviet regimes established in those countries. Petitioner contends that recognition of respondents’ power of attorney would contravene our national foreign policy.
Respondents rely principally upon the prima facie validity of the instrument and particularly upon the weight to be given to the statements contained in the consular certificate of acknowledgment. The court however is not prevented from inquiring into the true facts and surrounding circumstances as they may affect the validity of the instrument. On the contrary, section 32-a of the Personal Property Law entrusts the Surrogate with the power and duty to make such inquiry and determination in addition to the court’s inherent power to do so when circumstances require it (see Lythgoe v. Smith, 140 N. Y. 442; Albany County Sav. Bank v. McCarty, 149 N. Y. 71; Matter of Geiger, 7 N Y 2d 109; Matter of Goodman, 2 A D 2d 558; Matter of Bargel, 5 Misc 2d 657, affd. 7 A D 2d 645; Linton v. National Life Ins. Co. of Vt., 104 F. 584; 1 C. J. S., Acknowledgments, § 70).
The matter of the true places of residence of the principals, allegedly misrepresented in the instrument, is not controlling *674 insofar as it affects the validity of the instrument. While the United States has not recognized the absorption of the Baltic countries by the U. S. S. R. and the establishment there of Soviet regimes, it cannot be denied that they fall within the orbit of the U. S. S. R. This accounts for the practice of United States consular officials accredited to the U. S. S. R. certifying the authentication by its Foreign Ministry of notarial acknowledgments taken in the Baltic countries, and at the same time expressly stating that such certification does not imply recognition of Soviet sovereignty over the particular country.
Respondents in their opposing affidavit point out that they have in the past received powers of attorney so acknowledged and authenticated and so certified by the United States Consul at Moscow with knowledge derived from the contents of the instrument that the principals named therein resided in Lithuania. It is not material whether or not the United States Consul was misled by the statement of residence. Since the principals appeared personally before the United States Consul, he was neither concerned with the diplomatically correct statement of their address nor with the question of Soviet sovereignty. That matter is raised only in case of authentication of a notarial certificate in a Baltic country by the Foreign Ministry of the U. S. S. R., which here was intentionally avoided as the hearing brought out. The Federal statute requires a consular official to perform notarial acts upon request “ within the limits of his consulate ” (U. S. Code, tit. 22, § 1195) regardless of the place or country of residence of the person appearing before him. This provision is mandatory, except in specified cases not relevant here (Code of Fed. Reg., tit. 22, § 92.9). In conformity therewith it is provided that an instrument to be recorded or used in the courts of this State may be acknowledged before United States foreign officers including a consular agent “ appointed or accredited to, and residing within, the country where the acknowledgment or proof is taken” (Real Property Law, § 301, subd. 1; Jordan v. Underhill, 91 App. Div. 124; Personal Property Law, § 32-a). Thus the United States Consul at Moscow was authorized to take the acknowledgment of the instrument here in question no matter where the principals appearing before him resided so long as he was satisfied that they were the persons described in and who executed the instrument. Since there is no requirement that the place of residence or any address of the principal be set forth in the instrument or in the certificate of acknowledgment (Real Property Law, §§ 303, 306), it is immaterial that it be correctly set forth (Fahey v. Ottenheimer, 219 App. Div. 668). The court therefore agrees *675 with respondents that there is no question in this case of the United States Consul having improperly taken the principals’ acknowledgment even though their places of residence in the instrument were set forth as U. S. S. B. instead of Lithuania.
The other grounds of attack upon respondents’ power of attorney urged by petitioner are more serious. It appears that respondents were first apprised of this estate by their Moscow forwarders identified as the International Jurists College, a lawyers’ collective or guild more commonly known by the contraction ‘1 Iniurcolleguia ’ ’. It is with this body that respondents conducted all its correspondence, except such as they had in the matter with the Bussian Embassy which it represents in this and other courts. At its request they located the estate proceeding and reported their findings, advising it “in view of the difficulties which we have encountered in obtaining recognition for documents executed in Lithuanian S. S. B. to have all documents executed either in Moscow or on the territory of the Byelorussia S. S. B. so that there can be no question of authentication.” Decedent’s sisters were accordingly brought to Moscow, a distance of about 550 miles from their homes in Lithuania, to execute and acknowledge the power of attorney before the United States Consul. Bespondents thereafter received this instrument from ‘£ Iniurcolleguia ’ ’ together with other documents required for the kinship hearings.
It further appears from the record, buttressed by facts of which the court may take judicial notice (Civ. Prac. Act, § 344-a), that ££ Iniurcolleguia ” is a body of Soviet lawyers in Moscow organized and constituted pursuant to statute under the jurisdiction and control of the U. S. S. B. Ministry of Justice, for the purpose of exclusive representation of Soviet nationals in foreign legal matters. It is in effect a bureau of said ministry and an agency of the Soviet government. It carries on its business as a collective or co-operative of lawyers assigning members to handle cases for its clients, forwarding matters to attorneys of its own selection and when necessary securing their appointment as attorneys in fact for their clients, as was done here. Lawyers’ collectives exist in various cities of the Soviet Union for the practice of law in the domestic field on the same basis. Although not prohibited, there is little, if any, of private practice of law. But in the foreign field, it is prohibited for a Soviet national to act except through ££ Iniurcolleguia ”. (Razi, Legal Education and the Role of the Lawyer in the Soviet Union, 48 Cal. L. Rev. 776-804; Timasheff, Soviet Law, 38 Va. L. Bev. 871-885; Storey, The Current Peril of the Legal Profession, 12 Wash. & Lee L. Rev. 159-181; Storey, Law and Lawyers in a *676 Divided World, Wash. U. L. Q., June, 1958, p. 247; Shuman, Soviet Legality as Revealed by Soviet Jurisprudence, 5 Wayne L. Rev. 209-225; Malone, The Soviet Bar, 46 Cornell L. Q. 258-289; Gsovski and Grzybowski, Government, Law and Courts in the Soviet Union and Eastern Europe, Ch. 15; Berman, The Comparison of Soviet and American Law, 34 Ind. L. J. 559; Stason, An American Professor Visits Soviet Union, 38 Mich. State Bar J., Feb. 1959, 10.)
These lawyers’ collectives have been described as a bureau in the Soviet Ministry of Justice (38 Va. L. Rev., supra, p. 881), “ an essential force in subjecting the common people of Russia to the dictator’s power ” (Wash. U. L. Q., supra, June, 1958, p. 252), and “ tools of the State ” (48 Cal. L. Rev., supra, pp. 79A-795) no less so than other forms of collectives in the U. S. S. R. As such they are destructive of the fiduciary relationship essential between attorney and client (12 Wash. & Lee L. Rev., supra, p. 171). They leave little room for unrestricted freedom on the part of the client to choose his attorney and agree upon his terms of compensation and other conditions of employment, a requisite element under our law in the attorney-client or principal-agent relationships. A substantial portion of, if not the entire fee and the expenses charged tó the client by the collective, are paid into its common treasury out of which its members are paid salaries and its operating expenses are defrayed (id., p. 170). In the instant and similar matters, as one of respondents testified, they have a contingent arrangement with the collective ‘ ‘ in which our fee is based upon success in establishing kinship and having the Court direct payment ox-having the administrators and executors pay over to us. If we are not successful in our representation we have no fees.” Where no such payment is directed but the distributive share of the client is deposited in the City Treasury, respondents’ practice as that of other attorneys has been to apply for fixation of fees pursuant to section 231-a, and as attorneys in fact pursuant to section 231-b of the Surrogate’s Court Act, payable out of said share usually before deposit.
Whatever broader questions the foregoing raises, one determining fact is clear, namely, that behind the scenes the representative of the Lithuanian distributees is “ Iniurcolleguia ”, an agency of the U. S. S. R. Ministry of Justice. In Matter of Padolsky (N. Y. L. J., May 29, 1961, p. 16, col. 7) in which these respondents by authority of the Russian Embassy appeared for Lithuanian nationals, this court granted the Attorney-General’s motion to strike out their notice of appearance, holding that the court may not recognize any act by the U. S. S. R. involving *677 residents of Lithuania in view of United States foreign policy not to recognize the incorporation of Lithuania into the Soviet Union (Matter of Adler, 197 Misc. 104, 108, appeal dismissed 279 App. Div. 745, rehearing denied 110 N. Y. S. 2d 283; cf. Matter of Braunstein, 202 Misc. 244).
The instant application calls for a logical extension of the foregoing ruling. To uphold respondents’ power of attorney and notice of appearance on the ground of prima facie validity would not only, in the words of the late Surrogate McGarey in Matter of Adler (supra, p. 108), “ tacitly recognize the [Soviet] government, invade the domain of the political department, and weaken its position ”, but would also give sanction to indirect representation of Lithuanian nationals by an agency of the U. S. S. B. which procured their direct representation by attorneys of its own selection. The fact that respondents frequently appear on behalf of the Bussian Embassy for Soviet nationals is more than incidental; it meshes with unauthorized Soviet representation of Lithuanian nationals.
In this connection the court takes cognizance of statements contained in a letter from the State Department dated October 1, 1959, addressed to petitioner’s attorney, as follows:
“ In connection with your comments concerning the appointment of an agent of the Soviet Union to represent the Lithuanian heirs and obtain possession of the funds willed, you may be interested in the enclosed copy of a letter dated March 26, 1948, which the Department sent to the Governors of the states informing them that since this Government does not recognize the incorporation of the Baltic States into the Soviet Union, it consequently does not regard Soviet officials or their attorneys as having any right to act on behalf of non-resident Latvian, Estonian or Lithuanian nationals with respect to distributing shares owed to them from estates of persons dying in the United States. (Emphasis supplied.)
“ The effect to be given to such a power of attorney, when executed in the Soviet Union by nationals of Lithuania, is of course one for the Courts of New York to decide, and the action of the consul places no obligation on the Courts of New York to recognize such power of attorney.”
It is therefore not necessary for the invalidation of the power of attorney to respondents to indulge in surmise and suspicion and find the existence of duress in its procurement, as claimed by petitioner, whether or not based upon proof (cf. Danisch v. Guardian Life Ins. Co., 18 F. R. D. 77, 151 F. Supp. 17; The Denny, 127 F. 2d 404), or upon judicial notice of Soviet law and “ police state ” conditions which some courts have held sufficient *678 basis to discredit such instruments (Sobko Estate, 88 Pa. D. & C. 76; Matter of Azna, Sheboygan County Ct., Wis., decided Dec. 14, 1959, infra; Matter of Mikenes [Mikshis v. Palionis], Probate Court of Suffolk County [Mass.], decided Feb. 20, 1962, infra; cf. Matter of Geiger, 7 N Y 2d 109). Petitioner in fact has not produced any direct evidence of legal duress practiced upon the distributees, nor of their alleged illiteracy or ignorance of the contents of the instrument. Such evidence, it may be conceded, is not easily procurable. Nor is petitioner’s claim of unlawful solicitation of legal business by “Iniurcolleguia” well taken. Soviet nationals have no choice under Soviet law other than to use the services of “ Iniurcolleguia ” in their foreign legal matters. Heir-hunting for that reason is not involved here (cf. Matter of Wellington, 154 Misc. 271; Matter of Lynch, 154 Misc. 260; Ann. 171 A. L. R. 351-359; Penal Law, § 270-d). Moreover, respondents accepted the matter and their appointment in good faith. The fatal defect in their relationship to the Lithuanian distributees based upon the power of attorney running to them stems from the covert intervention and direct control exercised by a Soviet official body in its procurement and the attempt to accomplish indirectly what may not be accomplished directly, namely, Soviet representation of nationals of the. Baltic countries.
A similar power of attorney to one of the respondents herein was held invalid in the unreported Wisconsin case cited above (Matter of Azna). The decision therein recites inter alia:
“ The court takes note that the testimony indicates there is no freedom of choice of an attorney in fact by a Lithuanian national. The power of attorney as filed herein is written in Russian and English languages; the delegation of power goes to a firm representing the Soviet Embassy in Washington. Dispute exists as to its validity because it was executed under and by way of Russian Law instead of Lithuanian Law before a government official not recognized by the valid Lithuanian Government.
“ To recognize the power of attorney would be to disregard the law and give effect to the apparent attempt of the Russian authorities to circumvent the sanctions of the United States against its conquest.
‘ ‘ Argument has been offered, however, that the court should accept the document as a simple grant of power to individuals — and the court adds — by a beneficiary, who is only a Lithuanian national, to a firm, who incidentally is counsel for the Soviet Embassy, able to execute the delegation of authority. It is significant that the record is silent as to any personal acquaint *679 anceship, transaction or relationship between the agent-nominee and Stanislaus Anza. Without such proof and assurance of execution of the agency to the substantial benefit of the testator’s son, the court avoids granting the requested recognition.”
The resemblance to the instrument under consideration is obvious and the conclusion as to its validity is the same as that reached here. In Matter of Mikenes (supra), again involving these respondents but in an inverse manner, the Probate Court was concerned with the status of contending counsel for foreign heirs of the deceased residuary legatee, all Lithuanian nationals, in an equity proceeding to determine title to a certain bankbook. The court denied the motion of an attorney, who appeared for said foreign heirs purporting to be their attorney in fact, to strike out the subsequent appearance of the attorney for the Consul General of Lithuania at New York on behalf of said heirs. The court excluded, over objection, alleged “ substitution ” powers of attorney granted by respondents herein to the movant, together with the alleged original powers of attorney running from said foreign heirs to these respondents authenticated by IT. S. S. R. officials and certified by the United States Consul at Moscow; disregarded a power of attorney subsequently filed by movant purportedly running from said heirs to movant; and found “ that due to Soviet Russian occupation of Lithuania, nationals in said country no longer have free choice of action, but are subject to coercion and duress.”
Joining the petitioner herein is the special guardian appearing in the accounting proceeding on behalf of a distributee whose whereabouts is unknown and whose share likewise has been deposited in the City Treasury. The special guardian appearing on this application as amicus curiae recommends the granting of the requested relief.
Petitioner’s motion is granted. The power of attorney of the Lithuanian distributees running to respondents is invalid and their notice of appearance thereunder is stricken. Since there exists no attorney-client relationship between them, respondents may not be awarded compensation for their services out of the shares of the foreign distributees. However, respondents have rendered valuable services to the estate in establishing kinship and enabling the court to direct distribution. For such services, the court in its discretion will allow them reasonable compensation payable out of the estate which the court now fixes in the sum of $750. Reimbursement of disbursements will be allowed on the filing of an affidavit setting forth the expenses incurred. Settle order on notice.